THE STATE, ELLISTON P. MORRIS ET AL., PROSECUTOR, v. WILLIAM C. HEPPENHEIMER, COMPTROLLER.

1. The state may, in time of peace, condemn land in fee simple for its use as a, military encampment for the military forces of the state.

2. Commissioners to appraise the value of the land to be taken for such use may be constitutionally appointed by the governor of the state, without notice to the landowners.

3. The constitutional requirement of "due process of law," in the taking of private property for public use, will be satisfied, if there be (1) authority from the sovereign power for the taking; (2) the ascertainment of compensation, under legislative directions, by an impartial tribunal, after the owner shall have had reasonable opportunity to be heard before it, and after it shall have judicially investigated the matters pertinent to its inquiry; and (3) a right afforded to the owner to present his claims for adjudication in the ordinary courts of justice.

4. The owner of property to be condemned for public use has no constitutional right to have his compensation assessed by a jury.

5. A statute authorizing the taking of land for the use of the state itself directed that the amount of compensation, when ascertained, should be

paid by the state treasurer into the Court of Chancery to the credit of the owner, and that the Chancellor should give notice to the owner-named, and to all other persons claiming the fund, to present their claims, the validity of which he was to adjudge, and thereupon he was to order payment of the fund as he should deem equitable and just. *Held,* that on payment of the fund into court the state could constitutionally take possession of the land.

On *certiorari.*

Argued at November Term, 1892, before Justices DIXON, REED and GARRISON.

For the prosecutors, *Theodore Runyon.*

For the comptroller, *Barker Gummere.*

The opinion of the court was delivered by

DIXON, J. By a statute approved May 9th, 1889 (*Pamph. L., p.* 436), the governor was authorized to appoint two disinterested and impartial citizens of the state to be commissioners to ascertain the value of a designated tract of land at Sea Girt, in Monmouth county, and of all rights, private ways, easements and servitudes held, exercised or used by any person or corporation in, upon or over the said tract of land or any part thereof.

The act further provided that the commissioners should take an oath faithfully, impartially and justly to perform their duties, and then both by personal summons and by public advertisement should notify all persons interested of a time and place when and where they would meet to discharge their duties; that at such meeting, and at other meetings to which they might publicly adjourn, they should hear the representations of all claimants, inspect all documentary proofs offered and take the depositions of all witnesses produced, and should examine into and adjudge the true value of the said land, rights, private ways, easements and servitudes in or upon the said land or any part thereof, and thereupon should make their

:award in writing and file the same in the office of the state comptroller.

The act further directed that the award should be inspected by the governor and state comptroller, and if approved by them, that the amount of the valuations and awards, not exceeding $75,000, which the legislature had appropriated for such purpose, should be paid by the state treasurer into the Court of Chancery, to the credit of the several parties named in the award; and it was made the duty of the Chancellor to give notice to the said parties, and to all other persons claiming the funds awarded, to appear before him and present their claims, the validity of which he was directed to adjudge, and thereupon he was to order payment of the funds as he should deem equitable and just.

It was further enacted that, so soon as the said funds were paid into the Court of Chancery, the governor should take possession of the said lands and of all private ways or other easements or servitudes whatever in, upon or over the same, for the public use of the state as a military encampment for the military forces of the state, and the land, when so taken, should be held by the state free from any and every easement of way over the same and in fee simple absolute.

In accordance with the provisions of this statute there were paid into the Court of Chancery on April 10th, 1891, the sum of $67 to the credit of Elliston P. Morris, the sum of $20 to the credit of Charles S. Taylor, the sum of $21 to the credit of Walter Hinchman, and the sum of $29 to the credit of Charles S. Hinchman, being the amounts which had been ascertained and determined by the commissioners to be the value of their respective private ways over said tract of land, and awarded to them respectively as compensation for the same.

Thereupon this writ of *certiorari* was sued out by the persons above named and others to test the legality of the proceedings.

Since the case, as submitted to us, does not disclose that the prosecutors not above named have any interest in the premises, no further notice will be taken of them.

The first ground of objection presented by the brief of counsel for the prosecutors is that the purpose for which the lands are to be taken is not one for which the state has the right to take property in time of peace against the will of the owner.

The constitution of the United States clearly recognizes the right of each state to maintain its militia, and while it empowers congress to provide for organizing, arming and disciplining the militia, it reserves to the respective states the appointment of the officers and the authority of training the militia according to the discipline prescribed by congress. Our state constitution expressly enjoins upon the legislature the duty of providing by law for enrolling, organizing and arming the militia.

Under these provisions, congress (*U. S. Rev. Stat.*, § 1630) and the state legislature have caused the militia to be organized into companies, battalions, regiments, brigades and divisions, and it is incumbent on the legislature to furnish the means of training these bodies of men for military service.

That the training of the militia is a public purpose and that a tract of land is necessary therefor are propositions which, I must think, are indisputable. It follows that the state may condemn land for such purpose. And if we were at liberty to consider whether the fee simple of the land were necessary for the object in view, it would be easy to conclude that the periodical encampment of these bodies of men might render judicious the erection of permanent structures upon the land, and would at least compel the exclusion of other uses inconsistent with the state's design. The differences pointed out by counsel between the authority of the state in time of war and in time of peace do not seem relevant; for at all times the state may take private property for public use on making just compensation.

This objection is unfounded.

The next objection is, that the appointment of commissioners by the governor, who is the representative of the state, and without notice to the landowners, is not due process of law,

and, therefore, is not a constitutional mode of taking private property.

What is meant by "due process of law" varies with the object in view. When that object is the taking of private property for public use under a constitution like ours, it requires, *first,* authority from the sovereign power for the taking; *second,* the ascertainment of compensation, under legislative directions, by an impartial tribunal, after the owner shall have had reasonable opportunity to be heard before it, and after it shall have judicially investigated the matters pertinent to its inquiry; and perhaps there must be, *third,* a right afforded to the owner to present his claims for adjudication in the ordinary courts of justice. *Davidson* v. *New Orleans,* 96 *U. S.* 97; *Lent* v. *Tillson,* 140 *Id.* 316.

All these elements appear in the present case. The act of 1889, already cited, grants the requisite authority, and carefully provides for the impartiality of the commissioners, adequate notice to the owners and full investigation of their claims. Under the general laws of this state relative to the writ of *certiorari,* the owners, on probable cause seasonably presented to this court, are entitled to have the proceedings of this special statutory tribunal reviewed in matters of fact as well as of law, and to have the same reversed or affirmed in whole or in part, according to the justice of the case. *Rev. Sup.,* *p.* 84.

The fact that the governor appoints the commissioners does not impugn their impartiality. In performing such a duty he represents the state in no other sense than would the Chancellor or Chief Justice in exercising the same function. He represents the state, not as a litigant party, but as the sovereign, intent on guarding private rights as well as public interests, and no suspicion of unfairness can attach to him. Nor is his selection of commissioners an act in which the parties concerned are entitled to be heard. It is not a judicial act; it is political, like his selection of judges and all other officers, on whose integrity and discretion private citizens must rely. While usually the statutes of this state authorizing private

corporations to condemn lands confide the selection of appraisers to some member of the judiciary, and provide for notice of the selection, yet it frequently occurs that an appraiser is chosen entirely outside of any suggestion made at the hearing, one whose fitness therefor has not been the subject of comment by the parties, so that in effect the appointment is made without a hearing as to its propriety. Commissioners to appraise lands taken for municipal uses are often appointed for a term of years, and of course without hearing the parties concerned. Such a hearing is not essential to a valid appointment. *Beekman* v. *Saratoga and Schenectady R. R. Co.*, 3 *Paige* 45; *Matter of Village of Middletown*, 82 *N. Y.* 196; *Zack* v. *Pennsylvania R. R. Co.*, 25 *Pa. St.* 394.

It is further claimed that the record should show that the commissioners were disinterested and impartial citizens, but this is answered by the fact that the prosecutors have so framed the writ of *certiorari* as to have certified only the proceedings of the commissioners themselves, and have not laid before us the order appointing them, in which an averment of their qualifications would be expected to appear.

The next objection is that the act gives the property owner no right to have his compensation assessed by a jury, nor an appeal.

This is not requisite. *Scudder* v. *Trenton Delaware Falls Co.*, *Saxt.* 694; *In re Lower Chatham*, 6 *Vroom* 497, 507; *Beekman* v. *Saratoga and Schenectady R. R. Co.*, 3 *Paige* 45, 75; *United States* v. *Jones*, 109 *U. S.* 513, 519.

The next objection is that compensation has not been, and under the statute cannot be, awarded to these prosecutors for all their interest in the land.

These interests are not very clearly set forth in the case delivered to us, but so far as we can ascertain them, they do not appear to be anything more than the rights attendant upon the dedication of highways over the tract in controversy, by means of a map, according to which the prosecutors purchased lots in the neighborhood of the tract. So far as these rights are public rights, they can be, and by the statute are, abol-

ished without compensation; so far as they are private, they are rights of way, and compensation is awarded for them. The suggestion that the prosecutors are entitled to have so much of the tract as was held in private ownership by the Sea Girt Land Improvement Company, used in the mode contemplated by that company when it sold to the prosecutors the lots they possess, is without support in the law. Neither the exhibition of a map showing the division of the tract into private villa sites, nor the oral declarations of the officers of the company as to expected improvements, gave the prosecutors any interest in the land. So far as we can see, the award covers all their rights.

The last objection is that the act does not provide for the property owner payment, or a method whereby he can, on his own motion, obtain compensation.

The property being taken by the state itself, actual payment is not an essential preliminary to the taking. It is sufficient, if the law make provision by which the party can obtain compensation on his own motion. *Cooley Const. Lim.* 560; *Wheeler* v. *Essex Public Road Board,* 10 *Vroom* 291, 297; *Butler* v. *Sewer Commissioners, Id.* 665.

The act clearly does this. Under it the owner has but to apply to the Chancellor for the money deposited in court to his credit, and it will be paid to him unless his claim thereto be adjudged invalid.

The proceedings under review should be affirmed, with costs.