96 N.J. Super. 115 (1967)
232 A.2d 655
STATE OF NEW JERSEY, BY STATE HIGHWAY COMMISSIONER, PLAINTIFF-RESPONDENT,
v.
TOTOWA LUMBER & SUPPLY COMPANY, A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 15, 1967.
Decided July 13, 1967.
*117 Before Judges CONFORD, FOLEY and LEONARD.
Mr. Martin Klughaupt argued the cause for appellant.
Mr. David A. Biederman, Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
*118 The opinion of the court was delivered by LEONARD, J.A.D.
This is a condemnation case in which defendant appeals from a judgment of the Law Division in favor of plaintiff ordering the appointment of commissioners to appraise the value of a portion of defendant's land to be taken in condemnation by the State Highway Commissioner (State) in connection with the construction of Route 80 in the Borough of Totowa.
Before condemnation defendant owned 3.8 acres of land, triangular in shape, with an 800' frontage on River View Drive. Route 80 is planned to run east and west, perpendicular to River View Drive. Defendant does not contest the taking of that parcel of its land designated as No. 104, comprising .028 acre with a 67' frontage. In dispute is the right to condemn No. 104B, an adjoining segment of .061 acre and an 80' frontage, which lies outside the access right of way of the highway.
Union Building and Construction Corporation (Union) owns ten acres of land which would be divided by the highway. Condemnation left Union a two-acre tract north of the highway and about four acres to the south. This latter tract would be landlocked if not given access through defendant's land, since all of Union's frontage on River Drive is to be taken by the highway and defendant's land would lie between it and the road.
Original negotations between the State and defendant were confined to parcel No. 104 and a tentative agreement with respect thereto was reached in January 1965. It was not until July of that year that the State proposed to acquire No. 104B. The State's offer of $2,300 therefor was refused and that sum has been deposited in court. It is conceded that the proposed condemnation is solely for the purpose of unlocking Union's property.
By agreement of December 16, 1965 the State contracted to pay Union $163,000 for land taken and to build a 25' wide access road from River View Drive over parcel No. 104B which the State would acquire. This road would extend *119 130', 75' of which would be within Union's retained property and the balance within defendant's property. The State would maintain the latter portion and Union would maintain the balance. The construction costs of the road, including paving, would be $2,733. Adding this to the $2,300 proposed to be paid to defendant for its land, the total costs of the access road would be $5,033.
Defendant's primary contention is that the State cannot take (by condemnation) the disputed parcel of defendant's land to provide Union with what it describes as a private driveway, usable only by that corporation. Defendant argues that to allow this result would be to take private property for private use. It further contends that the State has abused its discretion in this regard.
It is not disputed that a taking of private property for private use is illegal. The question here is whether the proposed use of parcel No. 104B is public or private.
As said by Judge Goldmann in Essex County v. Hindenlang, 35 N.J. Super. 479 (App. Div. 1955), appeal dismissed 24 N.J. 517 (1957):
"Courts dealing with problems of eminent domain have generally been reluctant to define the phrase `public use.' * * * [T]hey have recognized that the phrase `is incapable of a precise and comprehensive definition of universal application.' * * * Judicial attempts to describe the subjects to which the expression `public use' would apply have proceeded on two different theories. One theory of `public use' limits its application to `use by the public'  public service or employment. * * * Courts that take the broader and more liberal view in sustaining public rights at the expense of property rights hold that `public use' is synonymous with `public benefit,' `public advantage' or `public utility.'"
We have adopted the liberal view as to the meaning of "public use." State Highway Com'r, State by v. Davis, 87 N.J. Super. 377 (App. Div. 1965), certification denied, 46 N.J. 135 (1965); State Highway Commissioner v. Buck, 94 N.J. Super. 84 (App. Div. 1967). In Davis the complaining landowner was one of several persons from whom land was to be taken to provide an access road to several *120 owners of large areas of land which had been rendered landlocked by highway takings. It seemed likely that one of the properties would be subdivided for further development and that the proposed access road would be joined with another road to provide a through thoroughfare of benefit to a number of people. The court said, "Thus, it cannot be reasonably concluded here that the State merely took the property of one man for the private use of another. The roadway is open to the general public and is not limited to private use" (at p. 380). The court also noted that it was reasonable to take only land needed for the freeway and unlock the remaining land since this was the more economical solution and converted the land into a potential area for future development (at p. 381).
Buck measured "public use" in the terms of public interest. There the State needed approximately four acres of defendant's land for highway purposes. It proposed to take an additional acre to build an access road to a 5.3-acre plot of another party which otherwise would be landlocked. It also appeared that the additional one acre proposed to be taken would be substandard in size with respect to an existing zoning ordinance. The court, in affirming the trial court's approval of the State's proposal, stated:
"The proofs amply support the findings of the trial judge and his conclusion. As he pointed out, when the State condemns all of a tract except a portion too small to comply with the zoning ordinance, the State must pay not only for what it takes but also for the damage to the remainder. Therefore when, as here, the value of the whole is little more than the value of the major part, it is sound business judgment and in the public interest to take the entire parcel. This avoids the expense of litigating the damage to the remainder and the hazards of a large award for such damage. We hold that here there was such a taking, and that here these considerations alone satisfied the requirements of N.J.S.A. 27:7A-4.1. In addition, we think the Commissioner, within the confines of said statute, may incidentally seek to avoid creating or leaving a landlocked parcel or parcels that do not comply with local zoning requirements. Rather than leave a land segment useless under local zoning and subject the State to payment of damages incident to unacquired remainder land, the Commissioner made a sound and sensible decision to condemn the *121 entire tract at a practically equivalent cost, especially when in so doing he preserved accessibility to adjoining lands which have an apparent potential for development." (at pp. 87-88)
At the trial the State's expert witnesses testified without contradiction that the proposed plan would be economically advantageous. Their testimony indicated that were the State forced to acquire Union's entire ten acres it would be forced to pay $205,000 for the land and $270,422 for the improvements, a total of $475,422. Alternatively, if no access road was built and the State took only the southerly four acres, the State risked an award as high as $165,000 for land and $270,422 for buildings, or $435,422 in total. As noted, under the present proposal the State will be obligated to pay only $168,033 ($163,000 plus the cost of the road).
Defendant argues that Davis is not applicable because it "involved a public road, not a private driveway of no use to anyone but Union." Herbert K. Englishman, a supervising engineer of design for the State conceded that "the only property owner that could possibly be served by this driveway * * * would be Union."
In Essex County, supra, the court said:
"The number of people who will participate in or benefit by the use for which the property is condemned is not the determinant of whether the use is or is not a public one. * * * [I]t is not necessary, for a use to be public, that the entire community or any considerable portion of it should enjoy the use." (35 N.J. Super., at p. 491)
In Buck, supra, the court stated:
"A use is not denominated public or private by simply relying upon the number of persons it serves. * * * It has been stated that a use does not `fail to be public upon the ground that the immediate enjoyment of it is limited to a small group or even to a single person'" (94 N.J. Super., at p. 89; emphasis added)
In May v. Ohio Turnpike Commission, 172 Ohio St. 555, 178 N.E.2d 920 (Sup. Ct. 1962), the court held applicable and constitutional a statute which allowed the taking of land by a public road agency solely to construct a driveway *122 to provide access for a third party's business operations in order to relieve that third party of the effect of purchase or condemnation of part of its land for highway purposes. See also Tracey v. Preston, 172 Ohio St. 567, 178 N.E.2d 923 (Sup. Ct. 1962).
In May the court stated:
"The defendant contends that the acquisition by right of eminent domain of land or easements for the construction of an access road to private property violates Section 19 of Article I of the Ohio Constitution, in that this is not a public use.
In 2 Nichols on Eminent Domain (1961 Supp.), 114, Section 7.51211, the following appears:
`Procuring an easement and creating a right-of-way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way by reason of the construction of a turnpike, thruway, freeway or other limited access highway has been held to be for a public use.'
The case of Luke v. Massachusetts Turnpike Authority, 337 Mass. 304, 149 N.E.2d 225, decided April 8, 1958, dealt with the question which is presented to us in this case. The court in that case, at page 309, 149 N.E.2d at page 228, said:
`If the easement or the private way should be viewed in the abstract, no public purpose would appear. Such an approach, however, would be closing the eyes to reality. The laying out of the turnpike the length of the Commonwealth and the acquisition of numerous sites essential to that object are attributes of one huge undertaking. Procuring an easement and creating a right of way for the benefit of parcels of land incidentally deprived of all or of some means of access to an existing way are but a byproduct of that undertaking.'
The remaining property of the plaintiff in this case, after the taking by the defendant for the turnpike, is landlocked. Prior to the taking of a portion of plaintiff's land and the construction of the turnpike, he conducted a trailer park on this land where he rents trailers to the public, sold trailers and was in the process of constructing a small building to manufacture trailers. The access road which the plaintiff seeks, according to the record in this case, will be open to the public and used by the public as a means of ingress and egress to and from the business conducted on these premises.
The reasoning used by the Massachusetts court is applicable to this case. In the construction of a turnpike, which is for `the public welfare' and `the public use,' it is often necessary that certain parcels of land be left without access. Providing access to such parcels for use by the individuals owning the parcels and by the public which has a right to use such ingress and egress to and from the premises is not in violation of the Ohio Constitution." (178 N.E.2d, at p. 922) *123 We are in full accord with the reasoning of the Supreme Court of Ohio and the supporting authorities as thus set forth.
We therefore conclude that even though the proposed access road would serve only Union, this would not per se prohibit the State from condemning the disputed portion of defendant's land.
The record amply and reasonably supports the trial court's determination that the proposed plan was the most economical of all the other legally possible solutions to the problem here present. Likewise, its finding that the proposed access road would permit the maximum utilization of Union's remaining land is so supported. The exercise of the State Highway Commissioner's judgment in the manner proposed in the performance of his responsibility to construct Route 80 as a whole so as best to serve the general public interest is not shown to represent any abuse of discretion.
We next consider defendant's contention that Union's land was not landlocked. At the trial defendant advanced as the sole support for this position the argument that surrounding landowners might purchase portions of Union's lands if the State condemned the entire premises, i.e., the entire landlocked remainder. Evalyn Polombo, secretary and stockholder of defendant corporation, testified that she thought defendant or other owners would be interested in "bidding" if this land was offered for sale by the State. There was no proof of a specific offer or of the total value of the land. The trial court found this suggested proposal was "problematical," "purely guesswork." We agree.
Defendant argues that Union's land could be unlocked without taking its property by the use of the plan or plans demonstrated in Exhibit D-5. Apparently the highway is to be elevated over River View Drive, and this plan contemplated that Union could be provided with an access easement to River View Drive across the lower level of the right of way. Although this exhibit was received in evidence, defendant at trial made no assertion such as he now advances *124 and no testimony was adduced with reference to it. As a result the court made no finding as to its feasibility. Ordinarily, therefore, we would not be inclined to consider this point. However, since our determination hereinabove of the principal legal question posed is one of first instance, due precaution for the rights of defendant as well as those of the public mandate that we remand this matter to the trial court so that it can determine as a fact whether the plan contained in Exhibit D-5 is a feasible and practical alternative which would unlock Union's land without the need for condemning any further portion of defendant's land. The State should first introduce evidence on this issue and defendant may respond thereto. But the burden of proof will rest on defendant.
In all other respects we conclude that the trial court's finding that defendant had not affirmatively demonstrated an abuse of discretion by the State is well supported by credible evidence in the record. In the absence of such a showing the courts will not interfere. Burnett v. Abbott, 14 N.J. 291, 294-295 (1954); Trenton v. Lenzner, 16 N.J. 465, 473 (1954), certiorari denied 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955).
Defendant also contends that the proposed condemnation is otherwise illegal because it involves land which is outside the 300' width within which property needed for a freeway can be taken under N.J.S.A. 27:7A-3. We agree with the trial court's conclusion that this statute does not control. It is clearly concerned only with takings justified by the needs of the road itself and not with ancillary considerations such as access roads to landlocked lands.
Defendant lastly contends that the trial court committed error in denying defendant the right to call the Highway Commissioner as a witness. We do not find that defendant was prejudiced by this alleged action. The three officials of the Highway Department who were called by the State testified fully as to all relevant facts.
*125 Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction. No costs on this appeal.