800 A.2d 86

TOWNSHIP OF WEST ORANGE, A MUNICIPAL CORPORATION, PLAINTIFF–APPELLANT, v. 769 ASSOCIATES, L.L.C., A NEW JERSEY LIMITED LIABILITY COMPANY, DEFENDANT–RESPONDENT, AND MARICUSA CORP., A NEW JERSEY CORPORATION; LOCAL AMERICA BANK OF TULSA, A FEDERAL SAVINGS BANK; AND AMERICAN CANCER SOCIETY, NEW JERSEY DIVISION INC., DEFENDANTS.

Argued February 25, 2002—Decided June 20, 2002.

566

*Richard S. Schkolnick* argued the cause for appellant (*Hersh, Ramsey & Berman*, attorneys).

*Dennis J. Drasco* argued the cause for respondent (*Lum, Danzis, Drasco, Positan & Kleinberg*, attorneys; *Mr. Drasco* and *Kevin J. O'Connor*, on the briefs).

*Thomas M. Olson* submitted a brief on behalf of *amicus curiae*, Institute for Justice (*McKirdy & Riskin*, attorneys; *William H. Mellor*, a member of the District of Columbia bar and *Dana Berliner*, a member of the Pennsylvania bar, on the brief).

The opinion of the Court was delivered by

ZAZZALI, J.

In this appeal we must determine whether a municipality's proposed condemnation of private property constituted a valid exercise of its eminent domain power. Plaintiff Township of West Orange (Township or West Orange) sought condemnation of approximately one-half acre of property owned by defendant 769 Associates, L.L.C. (769 Associates or defendant) for use as a dedicated public street. Defendant opposed the Township's action on the ground that the proposed taking was not for a public use. The trial court ruled in favor of the Township and authorized the condemnation. The Appellate Division reversed, holding that because the proposed taking sought to further only the interests of a private developer, the taking was improper. We conclude that the proposed taking is for a valid public use that will benefit the general public interest and therefore reverse the Appellate Division.

I

769 Associates owns property located on Northfield Avenue in West Orange (property or Northfield Avenue property). The property consists of an office building housing medical offices and a parking lot that services the building. Defendant's property fronts on Northfield Avenue, an Essex County road. Nordan Realty Corp. (Nordan) owns a 46.5–acre tract of land behind defendant's property approximately 2,000 feet from Northfield Avenue. Nordan intends to construct a development of ninety-five single-family homes on its property to be known as "Northfield Village." The proposed development abuts another proposed 198 single-family home development, "Bel–Aire at West Orange" (Bel–Aire), to the north, a single-family home to the west, an Essex County park to the east, and an undeveloped 52–acre tract of land owned by the Township to the southeast. To construct the dedicated street that is the subject of this dispute, the Township seeks to take a 30–foot wide strip of land along the western edge of 769 Associate's property. That land currently is part of defendant's parking lot. Once the Township acquires the property, it will construct the disputed access road to the proposed "Northfield Village" pursuant to a contract with Nordan. Nordan has stated that the 30–foot strip will be utilized in addition to Nordan's existing 20–foot wide right-of-way to Northfield Avenue.

In March 1986, the West Orange Planning Board (Board) passed a resolution granting Nordan preliminary site plan approval for Northfield Village. That approval contemplated the use of Cedar Avenue to Pleasant Valley Way (a major West Orange traffic artery) for ingress to and egress from Northfield Village. Cedar Avenue is a dedicated street running eastward past the Nordan, Bel–Aire and Township properties. The distance from the edge of Nordan's property to Pleasant Valley Way is between 2,000 and 2,500 feet. Currently, Cedar Avenue is a gravel and dirt road that is not fully improved, that is, it has no curbing, sidewalks or drainage and contains slopes exceeding those permitted by Township ordinances. Notwithstanding those shortcom-

ings, Cedar Avenue is considered a public right-of-way. The locations of the properties are identified in a modest rendering, rough in both scope and scale, at the end of this opinion.

Nordan's attempt to utilize Cedar Avenue for Northfield Village encountered substantial opposition from a number of Township residents. The residents persuaded the Board to consider an alternate route for Northfield Village in place of Cedar Avenue, as a result of which the Township commissioned Hamal Associates, Inc. (Hamal) to conduct a traffic study to appraise alternate routes of access to Northfield Village. Hamal's study suggested two potential alignments for access to Nordan's property, the Cedar Avenue road and the proposed Township road across 769 Associates' and Nordan's property, which contemplated using Nordan's 20–foot wide strip in combination with the 30–foot wide strip on the western edge of defendant's property. In support of the proposed right-of-way through defendant's property, the Township engineer stated that "it is sound engineering practice for two large developments such as [Northfield Village] and Bel–Aire to be linked by an inter-connected road system." Further, he noted that the proposed road would serve as a "secondary means of ingress and egress for the Bel–Aire project" and would be "critical in an emergency situation when the primary access from Mt. Pleasant Avenue [to Bel–Aire] is blocked."

In 1992, the Township and Nordan executed a Developer's Agreement whereby the Township Council would determine "access and egress to Northfield Avenue not inconsistent with" Hamal's traffic study. Nordan agreed to negotiate with adjoining property owners including 769 Associates to secure property to construct its right-of-way to Northfield Avenue. The agreement also provided that if Nordan's "negotiations are successful, the cost for the land and to make the wider right-of-way will be borne by [Nordan]." If Nordan could not acquire the necessary property after a reasonable time, the agreement stated that the Township "shall use its powers of eminent domain to provide the necessary access." Further, Nordan agreed to reimburse the

Township for all costs and fees incurred by the Township in the condemnation proceedings including the price of the property taken. Finally, the agreement required Nordan to contribute a total of $500,000 to West Orange's affordable housing fund for the right to construct Northfield Village.

By 1997, Nordan was successful in acquiring the necessary property from all of the adjoining property holders except defendant. Accordingly, pursuant to the Developer's Agreement, the Township was obligated to commence condemnation proceedings. The Township Council adopted Ordinance No. 1445–97, which authorized the Township to exercise its power of eminent domain to acquire the 30-foot strip of land on defendant's property. The Council stated that the proposed taking "will not only serve the public's interest in securing access to [Northfield Village] but will also provide access to other properties and proposed developments in the immediate vicinity." Pursuant to that Ordinance, the Township filed a condemnation complaint in the Superior Court in 1998. 769 Associates contested the action, asserting that there was no valid public use for the taking and that the condemnation proceeding was intended to benefit solely Nordan's private interest. After a complicated and protracted discovery dispute, the trial court denied defendant's challenge to the Township's right to condemn defendant's property by eminent domain, entering final judgment in favor of the Township.

The Appellate Division reversed, concluding that the Township's proposed taking sought to advance only Nordan's private interests and thus was not for a public use. *Township of West Orange v. 769 Assocs., L.L.C.*, 341 *N.J.Super.* 580, 594, 775 *A.2d* 657 (App. Div.2001). The court stated that although a municipality's exercise of its eminent domain power is entitled to a presumption of validity, that presumption may be rebutted when the condemnee can demonstrate that the true purpose of the taking is not for a public purpose. *Id.* at 588, 775 *A.2d* 657. Defendant's allegation that the taking would serve only private interests required the court to apply a "heightened scrutiny" standard of review. *Id.* at

588–89, 775 *A.*2d 657. Applying that standard, the court noted that the Hamal study considered the Cedar Avenue access a viable alternative to condemning defendant's property. *Id.* at 592, 775 *A.*2d 657. Hamal's traffic study also noted that the proposed route across defendant's property would not "attract cut through traffic." Accordingly, the court concluded that the "primary purpose of the proposed right-of-way … is to serve the private interest of Nordan." *Ibid.* The court determined that "the condemnation proceeding was primarily for a private purpose and was improper." *Id.* at 594, 775 *A.*2d 657.

We granted the Township's petition for certification. 170 *N.J.* 387, 788 *A.*2d 772 (2001). We also granted the motion of the Institute for Justice for leave to appear *amicus curiae.*

## II

### A

"Eminent domain is the power of the State to take private property for public use.... It is a right founded on the law of necessity which is inherent in sovereignty and essential to the existence of government[.]" *State v. Lanza,* 27 *N.J.* 516, 529, 143 *A.*2d 571 (1958) (quotation omitted). It is well-established that a reviewing court will not upset a municipality's decision to use its eminent domain power "in the absence of an affirmative showing of fraud, bad faith or manifest abuse." *City of Trenton v. Lenzner,* 16 *N.J.* 465, 473, 109 *A.*2d 409 (1954), *cert. denied,* 348 *U.S.* 972, 75 *S.Ct.* 534, 99 *L.Ed.* 757 (1955). Indeed, the United States Supreme Court has held that "it will not substitute its judgment for a legislature's judgment as to what constitutes a public use *unless the use be palpably without reasonable foundation.*'" *Hawaii Housing Auth. v. Midkiff,* 467 *U.S.* 229, 241, 104 *S.Ct.* 2321, 2329, 81 *L.Ed.*2d 186, 197 (1984) (quoting *United States v. Gettysburg Elec. Ry. Co.,* 160 *U.S.* 668, 680, 16 *S.Ct.* 427, 429, 40 *L. Ed.* 576, 581 (1896) (emphasis added)). In so holding, the

Supreme Court stated that courts should defer to legislative
bodies on questions implicating the state's sovereign authority:

> Similarly, the fact that a state legislature, and not Congress, made a public use
> determination does not mean that judicial deference is less appropriate. *Judicial
> deference is required because . . . legislatures are better able to access what public
> purposes should be advanced by an exercise of the taking power. . . . Thus, if a
> legislature, state or federal, determines there are substantial reasons for an
> exercise of the taking power, courts must defer to its determination that the taking
> will serve a public use.*
>
> [*Id.* at 243–44, 104 *S.Ct.* at 2330–31, 81 *L.Ed.*2d at 199 (emphasis added).]

■ The State's power of eminent domain nevertheless is sub-
ject to several important constitutional limits: the property ac-
quired must be taken for a "public use," the State must pay "just
compensation" in exchange for the property, and no person shall
be deprived of his or her property without due process of law.
See *N.J. Const.* art. I, ¶ 20; *State v. Heppenheimer,* 54 *N.J.L.*
268, 272, 23 *A.* 664 (1892). Because the "just compensation" and
due process conditions are not implicated in this appeal, we focus
on the "public use" requirement.

■ New Jersey courts traditionally have granted wide latitude
to condemning authorities in determining what property may be
condemned for "public use," reasoning that it is the province of
the Legislature to shape the contours of the "public use" require-
ment. *Burnett v. Abbott,* 14 *N.J.* 291, 294, 102 *A.*2d 16 (1954);
*Lenzner, supra,* 16 *N.J.* at 473, 109 *A.*2d 409. Nevertheless, the
question of what constitutes "public use" has generated some
discussion in the caselaw. See *Essex County v. Hindenlang,* 35
*N.J.Super.* 479, 488, 114 *A.*2d 461 (App.Div.1955), *appeal dis-
missed,* 24 *N.J.* 517, 132 *A.*2d 807 (1957) (noting that courts have
recognized that public use is incapable of precise and comprehen-
sive definition of universal application) (citation and quotation
omitted). In resolving such issues, our courts have applied a
flexible, deferential standard to determine what constitutes a
"public use." *State Highway Comm'r v. Totowa Lumber &
Supply Co.,* 96 *N.J.Super.* 115, 119, 232 *A.*2d 655 (App.Div.1967)
(citing *State Highway Comm'r v. Davis,* 87 *N.J.Super.* 377, 380,
209 *A.*2d 633 (App.Div.1965), *certif. denied,* 46 *N.J.* 135, 215 *A.*2d

30 (1965)). That view considers a "public use" as anything that "tends to enlarge resources, increase the industrial energies, and ... manifestly contributes to the general welfare and the prosperity of the whole community." Julius L. Sackman, 2A *Nichols' The Law of Eminent Domain* § 7.02[2] (3d ed. rev.1990) (hereinafter *Nichols '*). Thus, " 'public use' is synonymous with 'public benefit,' 'public advantage' or 'public utility.' " *Totowa Lumber, supra,* 96 *N.J.Super.* at 119, 232 *A.*2d 655 (quoting *Hindenlang, supra,* 35 *N.J.Super.* at 489, 114 *A.*2d 461).

Given the broad definition of "public use," it is not essential that the entire community or even any considerable portion of the community directly enjoy or participate in the condemned property for the taking to constitute a "public use." *Totowa Lumber, supra,* 96 *N.J.Super.* at 121, 232 *A.*2d 655 ("The number of people who will participate in or benefit by the use for which the property is condemned is not determinant of whether the use is or is not a public one.") (quoting *Hindenlang, supra,* 35 *N.J.Super.* at 491, 114 *A.*2d 461). Further, the fact that a private party may benefit from the taking does not render the taking private and not for "public use." See *County of Ocean v. Stockhold,* 129 *N.J.Super.* 286, 289, 323 *A.*2d 515 (App.Div.1974); *State v. Buck,* 94 *N.J.Super.* 84, 88, 226 *A.*2d 840 (App.Div.1967) (holding that although private interests may be served by condemnation, overarching question is whether purpose of taking is in public interest).

B

Courts have long held that the condemnation of private property for use as a public road fulfills the public use requirement. *North Baptist Church v. Orange,* 54 *N.J.L.* 111, 113, 22 *A.* 1004 (1891) ("Highways are conceded to be, and manifestly are, matters of public concern; and hence, the condemnation of property for streets, alleys and public ways is undeniably for a public use.") (quotation omitted). "A public highway is a road or street of any description and, however established, over which any

member of the public may lawfully pass. It has never been doubted that land might be taken for the purpose of laying out, extending or widening a public highway." *Nichols', supra,* at § 7.22.

In *Davis, supra,* the Appellate Division determined that the proposed condemnation of the defendant's property to construct an access road to Route 287 in Bridgewater Township was for a public use because it freed adjacent properties that had become landlocked after the construction of Route 287. 87 *N.J.Super.* at 380, 209 *A.*2d 633. The court stated that because the "roadway is open to the general public and is not limited to private use," the condemnation was for a valid public use. *Ibid.*

More recently, the Court of Appeals of Maryland arrived at the same conclusion in *Green v. High Ridge Association, Inc.,* 346 *Md.* 65, 695 *A.*2d 125, 130 (Md.Ct.App.1997):

> There can be no dispute of the fact that condemnation of private property for a public highway or road is a proper public use. . . . If a road is to be open for public travel the purpose for which the public may wish to travel is not material, and land may be taken by eminent domain for a road which is intended solely for driving for pleasure and recreation or to furnish a view of beautiful natural scenery. Streets are frequently laid out for the purpose of opening up private land, but *if a street is to be open to public travel it is well settled that it is for the public use, although it is of especial convenience or advantage to certain individuals, or even if its sole or principle object is to enhance the value of the land through which it passes*[.]
>
> [(citing *Anne Arundel County v. Burnopp,* 300 *Md.* 343, 478 *A.*2d 315, 319 (Md.Ct.App.1984) (emphasis added)).]

Further, several courts have approved of agreements between municipalities and third-parties whereby the municipality agrees to acquire private property by eminent domain and the third-party finances the costs of the condemnation. For example, in *Square Brighton v. Atlantic City,* a private landowner (Sands) entered into an agreement with Atlantic City in which the city committed to "promptly, without delay and as expeditiously as possible" acquire the plaintiff's property to be used as a public street and permit Sands to gain full use of its loading dock areas. 287 *N.J.Super.* 450, 452–53, 671 *A.*2d 203 (App.Div.1996), *aff'd sub nom., City of Atlantic City v. Cynwyd Invs.,* 148 *N.J.* 55, 689 *A.*2d

712 (1997). The agreement expressly provided that the city was to acquire the plaintiff's property by either negotiation or by eminent domain. *Ibid.* In upholding the condemnation, the court confirmed that the city's contractual obligation to procure the plaintiff's property did not invalidate the taking. *Id.* at 458, 671 *A.*2d 203.

Indeed, as early as 1895, in *Barr v. Mayor of City of New Brunswick,* 67 *F.* 402 (1895) a federal court determined that an agreement by the Pennsylvania Railroad Company to assume all expenses incurred by the municipality's condemnation of the plaintiff's property did not invalidate the taking. 67 *F.* 402 (C.C.D.N.J. 1895), *appeal dismissed,* 72 *F.* 689 (3d Cir.1896). If the taking was for a valid public purpose, the court held that an agreement to assume the costs of a taking "does not invalidate such action" nor detract from the determination that the property is taken lawfully. *Id.* at 403.

In *Duryea v. Town of East Hampton,* 172 *A.D.*2d 752, 569 *N.Y.S.*2d 139 (1991) the court rejected a claim by the plaintiff that the defendant municipality had contracted away its condemnation power to a private developer to create a public road. 172 *A.D.*2d 752, 569 *N.Y.S.2d* 139, 140 (N.Y.App.Div.1991). The court observed that "the acquisition of private lands to establish public roads is perhaps one of the best examples of acquisitions which confer a public benefit." *Ibid.* (citing *Matter of Burns,* 155 *N.Y.* 23, 49 *N.E.* 246, 247 (N.Y.1898)). Similarly, in *Rodrigues v. Town of Beekman,* 120 *A.D.*2d 724, 502 *N.Y.S.*2d 778 (1986) the plaintiff claimed that the defendant municipality's agreement with a private developer had conveyed impermissibly the defendant's eminent domain power to the developer. 120 *A.D.*2d 724, 502 *N.Y.S.2d* 778, 780 (N.Y.App.Div.1986), *appeal dismissed,* 69 *N.Y.*2d 822, 513 *N.Y.S.*2d 1027, 506 *N.E.*2d 537 (N.Y.1987). In rejecting that claim, the court held that the municipality's agreement with the developer was not a "redelegation," but a valid determination after a public hearing that the "economic and legal

burdens of the condemnation should rightfully be borne by the developer." *Ibid.*

■ The above cases affirm the principle that "even though the persons who expect to be benefited agree to defray the whole cost of the work, if the use is public the taking is valid." *Nichols',* *supra,* at § 7.08[5]. See also *North Baptist Church, supra,* 54 *N.J.L.* at 114–15, 22 *A.* 1004 (holding that promise by individual to pay part of condemnation expense for proposed public street does not contravene public policy); *United States v. 23.9129 Acres of Land,* 192 *F.Supp.* 101, 103 (N.D.Cal.1961) ("It is not necessary that the road be built and operated by public agencies. The only requirement is that it be built for a public purpose."); *Nicrosi v. City of Montgomery,* 406 *So.*2d 951, 952 (Ala.Civ.App.1981) ("That the expense incident to condemnation and the award itself are to be paid by private parties is immaterial when the property ... being acquired ... is to be used for a public benefit.").

## III

■ We hold that the Township may condemn 769 Associates' property for use as a West Orange public road. The record does not support the Appellate Division's determination that the proposed taking would serve principally Nordan's private interests. In any event, we are persuaded that the proposed road will serve an important public purpose by improving road travel within the Township of West Orange.

## A

■ As noted, a determination whether a taking is for a "public use" is largely a legislative question beyond the reach of judicial review except in the most egregious circumstances. *See, e.g., Midkiff, supra,* 467 *U.S.* at 240, 104 *S.Ct.* at 2329, 81 *L.Ed.*2d. at 197; *Texas Eastern Trans. Corp. v. Wildlife Preserves, Inc.,* 48 *N.J.* 261, 269, 225 *A.*2d 130 (1966); *Lenzner, supra,* 16 *N.J.* at 473, 109 *A.*2d 409. Justice O'Connor explained the need for deference

to legislative determinations of public use in *Midkiff,* supra. "Judicial deference is required because ... legislatures are better able to access what public purposes should be advanced by an exercise of the taking power[.]" 467 *U.S.* at 243, 104 *S.Ct.* at 2330, 81 *L.Ed.*2d at 199.

Neither 769 Associates nor *amicus curiae* has demonstrated persuasively how the proposed condemnation, even if it serves principally the Nordan development, constitutes an improper private use. *Cf. Hindenlang, supra,* 35 *N.J.Super.* at 491, 114 *A.*2d 461 ("The number of people who will participate in or benefit by the use for which the property is condemned is not determinant of whether the use is or is not a public one."). Nor is there evidence in the record suggesting that improper motives or bad faith prompted the Township's exercise of its condemnation power. Although an indiscriminate surrender of the eminent domain power to private parties or private interests would be impermissible, this is not that case.

In reversing the trial court, the Appellate Division found that because 769 Associates alleged that the Township's proposed taking would benefit substantially only Nordan's private interest, a "heightened scrutiny" standard of review should have been applied. *769 Assocs., supra,* 341 *N.J.Super.* at 589, 775 *A.*2d 657. In so holding, the panel relied on a passage from this Court's decision in *Cynwyd:*

> Generally, when the exercise of eminent domain results in a substantial benefit to specific and identifiable private parties, "a court must inspect with heightened scrutiny a claim that the public interest is the predominate interest being advanced." *Poletown Neighborhood Council v. City of Detroit,* [410 Mich. 616, 304 *N.W.*2d 455, 459 (1981)]. In determining whether projects with substantial benefit to private parties are for a public purpose, this Court has held that the trial court must examine the "underlying purpose" of the condemning authority in proposing a project as well as the purpose of the project itself. [*Wilmington Parking Auth. v. Land With Improvements,* 521 *A.*2d 227, 231 (Del.1986).]
>
> [*769 Assocs., supra,* 341 *N.J.Super.* at 589, 775 *A.*2d 657 (quoting *Cynwyd, supra,* 148 *N.J.* at 73, 689 *A.*2d 712.)]

The challenge to the proposed taking in *Cynwyd* was not based on the "public use" requirement. Justice O'Hern, writing for a

unanimous court, stated that "[t]he City deemed the acquisition of the Property to be for a lawful public purpose, *and that determination has not been put in issue." Id.* at 66, 689 *A.*2d 712 (emphasis added). Instead, the plaintiff claimed that Ordinance 61 violated the Local Budget Law, which provided that no officer, board, body, or commission shall enter into a contract for which no appropriation is provided. *Id.* at 64, 689 *A.*2d 712 (citing *N.J.S.A.* 40A:4–57).

 Notwithstanding that the "heightened scrutiny" language in *Cynwyd, supra,* is dicta, 148 *N.J.* at 73, 689 *A.*2d 712, we have never held that the standard is other than the manifest abuse of discretion test. See *Casino Reinvestment Dev. Auth. v. Banin,* 320 *N.J.Super.* 342, 346, 727 *A.*2d 102 (Law Div.1998) (noting that *Cynwyd* court did not establish a new "heightened scrutiny" standard of review). Moreover, in the two cases cited by this Court in *Cynwyd, Poletown Neighborhood Council v. City of Detroit,* 410 *Mich.* 616, 304 *N.W.*2d 455, 459 (Mich.1981), and *Wilmington Parking Authority v. Land With Improvements,* 521 *A.*2d 227 (Del.1986), the condemning authority transferred the condemned property to a private third-party whereas in this appeal the Township will retain ownership of the condemned property and will maintain the property as a public road. Thus, the reference in *Cynwyd* to *Wilmington Parking Authority* was simply to "reaffirm the established principle that where the real purpose of the condemnation is other than the stated purpose, the condemnation may be set aside." *Banin, supra,* 320 *N.J.Super.* at 346, 727 *A.*2d 102.

B

 The record confirms that the proposed taking of defendant's property for use as a public road constitutes a public use. Ordinance No. 1445–97 stated that the taking "will not only serve the public's interest in securing access to [Northfield Village] but will also provide access to other properties and proposed developments in the immediate vicinity." The Hamal traffic study offered

the Township two alternative routes for ingress to and egress from Nordan's property—the existing but unimproved Cedar Avenue access and the proposed right-of-way through defendant's land. That the Hamal study considered Cedar Avenue a viable alternative is of no moment. The Township's decision is entitled to deference and West Orange is under no affirmative obligation to show that the proposed road is superior to the Cedar Avenue right-of-way. See *Essex Fells v. Kessler Inst.*, 289 *N.J.Super.* 329, 337, 673 *A.*2d 856 (1995) (citing *Lenzner, supra,* 16 *N.J.* at 475, 109 *A.*2d 409). Indeed, the record indicates that the proposed road will link two major West Orange roads, Mt. Pleasant Avenue and Northfield Avenue. The road also will serve the Bel–Aire subdivision, as well as the Township's 52–acre parcel that is zoned for residential use.

Consistent with the above Ordinance, the Township engineer's unchallenged certification, discussed above, declared that the proposed road through defendant's property would serve as a "secondary means of ingress and egress for the Bel–Aire project" and would be "critical in an emergency situation when the primary access from Mt. Pleasant Avenue [to Bel–Aire] is blocked." Likewise, the engineer confirmed that "it is sound engineering practice for two large developments such as [Northfield Village] and Bel–Aire to be linked by an inter-connected road system." Thus, in addition to providing a right-of-way for Northfield Village, the taking will provide access for the Bel Aire development and the currently undeveloped 52–acre Township-owned parcel (already zoned for residential use) to both Mt. Pleasant Avenue and Northfield Avenue. The Township therefore has amply demonstrated that the proposed road through defendant's property is for a valid public use and does not constitute a "manifest abuse of discretion of the power of eminent domain." *RAR Dev. Assocs., supra,* 323 *N.J.Super.* at 515, 733 *A.*2d 580.

Finally, 769 Associates asserted at oral argument that the taking will result in extraordinary damage to the property and that significant economic injury would result. Assuming that to

be so, we expect that the constitutional requirement of "just compensation," *N.J. Const.* art. I, ¶ 20, will be honored fully in any valuation proceeding.

## IV

The judgment of the Appellate Division is reversed and the judgment of the Law Division is reinstated.

582

*For reversal and reinstatement*—Chief Justice PORITZ and Justices STEIN, COLEMAN, LONG, VERNIERO, LaVECCHIA, and ZAZZALI—7.

*Opposed*—None.