**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2686-22

HUDSON COUNTY
IMPROVEMENT AUTHORITY,
a body corporate and politic, and
instrumentality of the County of
Hudson,

      Plaintiff-Respondent,

v.

MARIANA PROPERTIES, INC.,

      Defendant-Appellant,

and

STATE OF NEW JERSEY,

      Defendant,

and

TOWN OF KEARNY,

      Defendant-Respondent.

_____

Submitted October 7, 2024 – Decided October 29, 2024

Before Judges Sabatino, Berdote Byrne, and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Docket No. L-3754-22.

Duane Morris, LLP, attorneys for appellant (David B. Amerikaner, of counsel and on the briefs; Lori A. Mills, on the briefs).

McManimon, Scotland & Baumann, LLC, attorneys for respondent Hudson County Improvement Authority (Kevin P. McManimon, and Malcolm X. Thorpe, on the briefs).

Castano, Quigley, Cherami, LLC, attorneys for respondent Town of Kearny, join in the brief of respondent Hudson County Improvement Authority.

PER CURIAM

Mariana Properties, Inc. appeals from the trial court's April 5, 2023 order for judgment and appointment of commissioners in this condemnation action involving property located in the Koppers Coke Peninsula Redevelopment Area. Mariana contends the Hudson County Improvement Authority ("HCIA") failed to: 1) conduct bona fide negotiations; 2) account for an uneconomic remnant that would result from the taking; and 3) articulate a valid public purpose. Consequently, Mariana asserts the HCIA's verified complaint must be dismissed to comport with the Eminent Domain Act ("the Act"), N.J.S.A. 20:3-1 to - 50.

We conclude most of Mariana's contentions, before us and the trial court, are premature and more appropriately addressed at a future valuation proceeding, if necessary, after receipt of the commissioners' report. Therefore, we focus on whether the HCIA's offer comported with the requirement to engage in bona fide negotiations prior to commencing a condemnation action, and whether the HCIA has articulated a valid public purpose for the taking. Because we conclude both issues in the affirmative, we agree with the well-reasoned oral opinion of the Honorable Assignment Judge Jeffrey R. Jablonski and affirm.

I.

Mariana owns land on Koppers Peninsula designated as Block 287, Lots 32.02, 46, 47, and 47.01 on the Tax Map of the Town of Kearny ("Property"), located in the Koppers Coke Peninsula Redevelopment Area. The Property is subject to substantial environmental remediation efforts to both the soil and groundwater, with much of the remediation work completed.

The HCIA seeks a permanent access easement ("Easement") over a portion of the Property to construct a Spine Road to connect property owned by New Jersey Transit and the Morris Koppers Redevelopment, and create a signaled intersection at Belleville Turnpike and Crosspike Drive. The Easement would create a jug handle allowing trucks heading west on the Bellevue

3

Turnpike to turn left onto Crosspike Drive. The Spine Road would provide access to a public facility, the New Jersey Transit Grid Traction Power System Project, and three new industrial warehouses. To do so, the Spine Road would cut across the Property and leave the Property's southeastern corner, fronting the Belleville Turnpike, separate from its larger remainder. The Easement would total 51,993 square feet, or just under 1.2 acres. Mariana would reserve all property rights, including full rights to utilize the improvement for ingress and egress to the Belleville Turnpike.

The HCIA retained an appraiser, Maurice Stack, to ascertain the quantum of just compensation for the Easement over the Property. In June 2018, Stack conducted a pre-acquisition inspection of the Property. Stack's appraisal report was completed two years later in July 2020. As part of this process, Stack utilized the "before and after method" to determine Mariana's compensable damages. This required Stack to subtract the market value of the Property before the taking from the market value of the Property after the taking.

Stack determined the Property's highest and best use was industrial redevelopment, a warehouse or distribution center in particular. After reviewing similar warehouse property sales from the surrounding area, Stack determined the value of the portion "taken" by the Easement to be $625,000. When this

value was juxtaposed with the substantial functional and economic benefits the Easement would confer upon the Property, Stack opined "these non-conjectural and quantifiable economic benefits completely offset the $625,000 value established for" the Easement. The HCIA accordingly offered Mariana one dollar for the Easement.

Mariana responded, seeking seventeen forms of documentation and reserving the right to ask for more. The HCIA responded and provided Mariana the requested documentation. After reviewing the information provided by the HCIA, Mariana followed up with a request for additional clarification and documentation. After further communications, Mariana rejected the HCIA's offer of one dollar as just compensation, citing the Spine Road's impact to the Property's remediation-based improvements, and claiming the value of the taking cannot be determined based solely upon the 1.194 acres comprising the Easement area. Instead, Mariana asserted the Spine Road would displace and sever from functional use a total of 3.53 acres of land, and "a significant portion of [which] will be completely isolated from the remainder of the Property and useless to" Mariana (the "Donut Hole"). It also disagreed with the 50% discount Stack's report applied to the taking of an easement rather than a taking in fee simple, arguing the road will be utilized for its intended purposes regardless of

the legal distinction over the property interest. Mariana observed, by taking only an easement to build the Spine Road, the HCIA would receive the benefits of effectively obtaining that portion of the Property and leaving Mariana with the obligation to pay the annual property taxes. It further claimed, when the Donut Hole is added to the Spine Road taking, the HCIA would effectively take 2.52 acres of land.

Mariana accepted Stack's valuation of $1,050,000 per acre and counteroffered with a demand of $2,646,000 for the 2.52 acres of the Property "subject to the [E]asement or . . . cut off from the remainder of the [P]roperty by the [Spine Road]." Mariana also stated the counteroffer was subject to nine additional, enumerated conditions detailed in its correspondence.

The HCIA rejected Mariana's settlement offer in April 2021, but raised its offer of just compensation to $625,000 for the Easement. It stated it was aware of the Property's environmental conditions and the on-going remediation activities and offered to work with Mariana to address concerns regarding the existing remediation efforts. The HCIA's counteroffer did not address the Donut Hole but stated it was willing to discuss the outstanding issues related to Block 287, Lot 32.03.

A-2686-22

Efforts to reach a settlement continued throughout 2021 and 2022. In May 2022, Mariana sent the HCIA a draft settlement agreement with the settlement price left open for further discussions. On October 28, 2022, the HCIA notified Mariana of its intent to file suit in the Superior Court to acquire the Easement over the Property.

The HCIA filed a verified complaint and order to show cause, and declaration of taking against Mariana, the State of New Jersey, and the Town of Kearny on November 10, 2022. Mariana timely answered the HCIA's complaint asserting, among other things, the HCIA had failed to conduct bona fide negotiations, the desired taking lacked a public purpose to support condemnation, and opposed the order to show cause.

On March 31, 2023, Judge Jablonski rendered an oral decision[1] in the matter, finding the HCIA had negotiated in good faith with Mariana and presented a sufficient public purpose for the taking. The court entered final judgment and appointed commissioners to appraise the land and fix compensation. This appeal followed.

---

[1] The transcript of the opinion was not included in either party's appendix. At our request, the parties procured a transcript of the judge's oral decision after the initial briefs were filed, and we permitted supplemental briefing.

II.

The trial court's decision to uphold a municipality's condemnation of private land pursuant to the Act is reviewed de novo. See Borough of Glassboro v. Grossman, 457 N.J. Super. 416, 437-38 (App. Div. 2019) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)). When a municipality exercises its eminent domain power, we "'will generally not inquire into a public body's motive concerning the necessity of the taking.'" Mount Laurel Twp. v. Mipro Homes, LLC, 379 N.J. Super. 358, 375 (App. Div. 2005), aff'd, 188 N.J. 531 (2006) (quoting Borough of Essex Fells v. Kessler Inst. for Rehab., Inc., 289 N.J. Super. 329, 337 (Law Div. 1995)). This is because determining "[w]hether a taking is for a public use 'is largely a legislative question beyond the reach of judicial review except in the most egregious circumstances.'" Ibid. (quoting Twp. of W. Orange v. 769 Assocs., 172 N.J. 564, 576 (2002)). Nonetheless, because this is a de novo review, we afford no deference to the legal conclusions made by the trial court and may reverse the trial court's decision to enforce condemnation if it is based on flawed legal reasoning. See Manalapan Realty, 140 N.J. at 378.

Generally, we "will not overturn an exercise of eminent domain without affirmative proof of 'fraud, bad faith, or a manifest abuse' of authority." Casino

Reinv. Dev. Auth. v. Birnbaum, 458 N.J. Super. 173, 187 (App. Div. 2019) (quoting Twp. of W. Orange v. 769 Assocs., LLC, 172 N.J. 564, 571 (2002)). The trial court's factual findings, however, are entitled to deference, and we will reverse those findings only if "they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence." State v. 1 Howe St. Bay Head, LLC, 463 N.J. Super. 312, 331 (App. Div. 2020) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). See also Birnbaum, 458 N.J. Super. at 187.

Mariana argues the HCIA failed to make a bona fide offer of just compensation, relied upon a stale appraisal for its offer of just compensation, did not conduct bona fide negotiations, and prematurely ended negotiations. We disagree. As noted by Judge Jablonski, Mariana's arguments are belied by the record.

N.J.S.A. 20:3-6 requires public entities to conduct "bona fide negotiations" with landowners, dealing forthrightly and fairly to reach a settlement before commencing condemnation litigation. Pursuant to N.J.S.A. 20:3-6,

> no action to condemn shall be instituted unless the condemnor is unable to acquire such title or possession through bona fide negotiations with the prospective condemnee, which negotiations shall include an offer

9

in writing by the condemnor to the prospective condemnee holding the title of record to the property being condemned, setting forth the property and interest therein to be acquired, the compensation offered to be paid and a reasonable disclosure of the manner in which the amount of such offered compensation has been calculated, and such other matters as may be required by the rules.

Rule 4:73-1 adds that reasonable disclosure includes, among other things, "a statement of the full fair market value including a description of the appraisal valuation method or methods relied upon as well as a breakdown of the appraised value allocated to the land to be acquired."

The Act "does not define what is necessary to meet the statutory requirements of a bona fide negotiation." Borough of Merchantville v. Malik & Son, LLC, 218 N.J. 556, 571 (2014). Rather, we focus on the pre-negotiation disclosure's reasonableness, and ask whether it "permit[s] a reasonable, average property owner to conduct informed and intelligent negotiations." Borough of Merchantville v. Malik & Son, LLC, 429 N.J. Super. 416, 433 (App. Div. 2013) (quoting State, by Comm'r of Transp. v. Carroll, 123 N.J. 308, 321 (1991)), aff'd 218 N.J. 556 (2014). We permit the condemnor to provide "an initial full price offer," Malik & Son, 218 N.J. at 572 (quoting Carroll, 123 N.J. at 318), that "place[s] the condemnee 'in as good a position monetarily as the owner would

have occupied had the property not been taken.'" Ibid. (quoting Casino Reinv. Dev. Auth. v. Katz, 334 N.J. Super. 473, 485 (Law Div. 2000)).

An offer of just compensation must be predicated "on the property owner's loss, not the condemning authority's gain," and "is the difference between the value of the property before and after the taking." 1 Howe St., 463 N.J. Super. at 344. The offer must take into account fair market considerations and benefits "that a willing buyer and a willing seller would weigh in coming to an agreement on the property's value at the time of the taking and after the taking." Borough of Harvey Cedars v. Karan, 214 N.J. 384, 412 (2013). Importantly, a condemnor is not required to negotiate until a settlement is reached, and "[i]f the negotiation process fails to settle the matter, the condemnor may file a complaint to condemn and seek an order for the appointment of commissioners to fix the amount of just compensation." 1 Howe St., 463 N.J. Super. at 344; see also Malik & Son, 218 N.J. at 572-73 (quoting Cnty. of Morris v. Weiner, 222 N.J. Super. 560, 565 (App. Div. 1988)).

The record before us demonstrates the HCIA conducted bona fide negotiations. Stack's appraisal report describes how he determined the property's value, the value of the Easement sought, the compensation offered, and an explanation of how he arrived at the offer for just compensation. It

responded to Mariana's requests for documentation and counteroffer by substantially raising its offer of just compensation. By the plain language of N.J.S.A. 20:3-6, the HCIA satisfied its statutory obligation to negotiate in good faith.

That Stack relied upon Bolan's report, which estimated the Spine Road's construction value at approximately $37 million without further explanation, does not change this conclusion. Mariana was entitled to reasonable disclosure pursuant to N.J.S.A. 20:3-6. Bolan's report explained the benefits Spine Road will provide directly to the Property and disclosed the project's construction value. Similarly, Mariana's stale appraisal argument is unavailing. Mariana has failed to produce any affirmative evidence the HCIA used the older sales data in bad faith or to abuse its eminent domain authority. Mariana's own disagreement with the sales data in Stack's appraisal does not invalidate the HCIA's offer. Mariana could have provided credible information to support its counteroffer but elected not to do so. Instead, the record indicates Mariana counteroffered with a settlement of $2,646,000, consistent with estimates used in Stack and Bolan's reports, and untethered to anything other than Stack's price-per-acre valuation.

Finally, the HCIA's disengagement from further negotiations is not evidence of an absence of bona fide negotiations. The HCIA presented an offer of just compensation in 2020. Negotiations proceeded through to Spring 2022. In the approximate two years of negotiations, the HCIA and Mariana were unable to agree on any terms of import. The last email and accompanying draft agreement demonstrate there was no development on the issue of price; both parties were unwilling to move from their offers of $2,646,000 and $625,000, respectively, requiring a valuation by appointed commissioners. At its core, Mariana's dispute is not with the character of the negotiations, but with the value of the land to be taken. See N.J. Dep't of Env't Prot. v. Midway Beach Condo. Ass'n, 463 N.J. Super. 346, 353 (App. Div. 2020) (affirming the trial court's finding that "because there was an offer, [the dispute] was not a bona-fide-negotiations issue, but rather a valuation-of-property issue"). Rather than allegedly abruptly ending negotiations, the HCIA negotiated with Mariana for two years without any progress. There is nothing in the record to suggest Judge Jablonski abused his discretion in finding the HCIA negotiated in good faith.

Mariana also argues the HCIA lacks a valid public purpose to support the taking, maintaining the HCIA proffers only a conclusory statement as to public purpose that is belied by information provided during negotiations. From this

13

information, Mariana surmises the Spine Road is intended "to provide a vehicular access route for a single, private warehouse development on the Koppers Peninsula." It relies on the draft Easement agreement which defines "Users" as "HCIA and HCIA's successors, assigns, and/or transferees and . . . its or their tenants, licensees, occupants, business invitees, and guests." Mariana gleans from this language "an intent by the HCIA to transfer or assign its easement interest in the Spine Road to a third party, potentially the private developer planning the private warehouse development on the Koppers Peninsula." It argues the HCIA has not produced any evidence the Spine Road will be open to the public or anyone other than visitors to the private warehouse.

A condemnor may take private property only if it is to be put to public use. Birnbaum, 458 N.J. Super. at 188 (quoting Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 356 (2007)). We give condemning authorities wide latitude in "determining what property may be condemned for 'public use,' reasoning that it is the province of the Legislature to shape the contours of the 'public use' requirement." 769 Assocs., 172 N.J. at 572 (quoting Burnett v. Abbott, 14 N.J. 291, 294 (1954), and Trenton v. Lenzner, 16 N.J. 465, 473 (1954)). The taking need only "tend[] to enlarge resources, increase the industrial energies, and . . . manifestly contribute[] to the general welfare and

the prosperity of the whole community." Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 161 (2013) (omission in original) (quoting 769 Assocs., 172 N.J. at 573). Given this broad definition, a valid public use does not require "any considerable portion of the community directly enjoy or participate in the condemned property." 769 Assocs., 172 N.J. at 573. Similarly, the fact that a private party may benefit from a taking is not dispositive as to whether the taking is public or private. Ibid.

Here, Mariana's sole argument is that the HCIA's "articulation is conclusory." Mariana speculates the Spine Road will service only a single, private entity based on language used in a draft Easement agreement exchanged prior to litigation. According to Mariana, the HCIA has done nothing to assuage its concerns that no one other than visitors to the private warehouse will use the Spine Road or that members of the public may be precluded from using it.

Contrary to Mariana's assertion, the HCIA has articulated a valid public purpose that is more than conclusory. Stack's appraisal report states the Spine Road will connect "the [New Jersey] Transit site and the Morris Koppers Redevelopment with a proposed intersection at Belleville Turnpike and Crosspike" Drive. Bolan adds "[t]he Spine Road will provide access to a public facility, the [New Jersey] Transit Grid Traction Power System Project[,] and

three new industrial warehouses," creating a signalized intersection perpendicular to the Belleville Turnpike. This intersection will provide "a safe and direct connection . . . to the major interstate truck routes of [New Jersey] Turnpike and Interstate 280 which will not require an illegal left turn across" the Belleville Turnpike. Additionally, the Spine Road would provide sewer and water utilities for a new warehouse built on the property, in addition to allowing use of the Spine Road for ingress and egress.

Nothing in the record indicates Judge Jablonski abused his discretion in finding the HCIA articulated a valid public purpose for the taking. Mariana's reliance upon its own speculation does not raise any affirmative evidence of fraud, bad faith, or an abuse of the HCIA's authority. Birnbaum, 458 N.J. Super. at 187.

To the extent we have not addressed any of Mariana's remaining arguments, we are satisfied they lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION