NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4556-17T2

BOROUGH OF GLASSBORO,

      Plaintiff-Respondent,

v.

JACK GROSSMAN, MATTHEW
ROCHE, and DAN DESILVIO,

      Defendants-Appellants.

_____

APPROVED FOR PUBLICATION

January 7, 2019

APPELLATE DIVISION

Argued December 10, 2018 – Decided  January 7, 2019

Before Judges Sabatino, Haas and Sumners.

On appeal from Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0075-18.

R. William Potter argued the cause for appellants (Potter and Dickson, attorneys; R. William Potter and Peter Dickson, on the briefs).

M. James Maley, Jr., argued the cause for respondent (Maley Givens, PC, attorneys; M. James Maley, Jr., Erin E. Simone, and Kevin Diduch, on the brief).

Robert J. McNamara (Institute for Justice) of the Virginia bar, admitted pro hac vice, argued the cause for amicus curiae Institute for Justice (McKirdy, Riskin, Olson & DellaPelle, PC and Robert J. McNamara, attorneys; Anthony F. DellaPelle and Robert J. McNamara, on the brief).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

In this accelerated appeal, we must consider the evidentiary implications of a key provision within the Local Redevelopment and Housing Law ("LRHL"), N.J.S.A. 40A:12A-1 to -49. The provision in question, N.J.S.A. 40A:12A-8(c), authorizes a municipality or redevelopment agency to acquire by condemnation lands or buildings which are "necessary for the redevelopment project."

Specifically, we must address what showing, if any, of necessity the municipality or agency must make in order to condemn a parcel located within the redevelopment zone and take it from its owners. Existing case law instructs such a taking must at least have a reasonable basis. The case law does not make clear, however, whether the condemning authority can simply proclaim that it needs the parcel for redevelopment, or whether the condemnor must do more if the taking is challenged and present proof of necessity tied to a specific project.

For the reasons that follow, we hold that if a landowner within the redevelopment area contests the necessity of a condemnation pursuant to N.J.S.A. 40A:12A-8(c), the statute logically requires the condemning authority to articulate a definitive need to acquire the parcel for an identified

redevelopment project. That articulated need must be more specific than the mere "stockpiling" of real estate that might, hypothetically, be useful for a redevelopment project in the future. In addition, the condemning authority in such a contested case must present to the court at least some evidence – consisting of facts, expert opinion, or both – that provides reasonable substantiation of the need. To hold otherwise and allow the condemning authority merely to proclaim a need, without having any obligation to substantiate its existence, would improperly read the term "necessary" out of the Legislature's enactment.

In light of our legal conclusion, we reverse the trial court's decision allowing the Borough of Glassboro to acquire defendants' property because the Borough presented no evidence substantiating that the property is necessary for the purpose of future public parking, a need that was asserted in conclusory fashion in the Borough's verified complaint. Consequently, we revoke the Borough's declaration of taking and vacate the trial court's appointment of condemnation commissioners to value the property. Our ruling is without prejudice to the Borough pursuing a new complaint with appropriate evidential support.

We reject defendants' other arguments for reversal, including their claims that the Borough has acted in bad faith and thereby forfeited its power

to condemn, and that the Borough is estopped from arguing that it needs or will need the subject property for public parking due to an unpublished opinion in an unrelated zoning case.

I.

The subject property is a mostly vacant lot consisting of .91 acres, designated on the municipal tax map as Block 29, Lot 17, and also known as 24-26 North Academy Street in the Borough of Glassboro. A small "derelict structure" is on the property. According to the Borough's brief, the property is about a block away from an ongoing redevelopment activity in Glassboro that contemplates 190,600 square feet of retail space, 81,000 square feet of classroom space, 1,870 student-housing beds, 109 apartments, and a 1.75-acre park. The overall cost of the redevelopment is estimated at $450 million.

The title documents in the appendix reflect the property is currently owned by defendants Jack Grossman and Matthew Roche. Grossman and Roche acquired the property in October 2002. A sale contract, recorded September 27, 2016, reflects that codefendant Dan DeSilvio has entered into an agreement with Roche and Grossman to purchase the property from them

for $125,000. The purchase price is payable with $25,000 down and a $100,000 balance to be paid in installments through August 2020.[1]

According to DeSilvio's certifications, he and his wife, both of whom are graduates of Rowan University in Glassboro, hope to develop the lot and other nearby parcels they have acquired. In particular, the DeSilvios plan to "erect mixed residential, commercial, [and] retail [buildings] to service the growing needs of nearby Rowan University for student housing and to provide economic stimulus to the downtown . . . [through] . . . an infusion of 'walkable' urban housing."

As defendants acknowledge, their property is located within a redevelopment area, pursuant to a redevelopment designation adopted by the Borough in a May 2000 ordinance. Under the LRHL, a municipality is authorized to designate a "redevelopment area," also referred to as an "area in need of redevelopment," if the area meets certain conditions and certain procedures are followed. N.J.S.A. 40A:12A-5 and -6.

Once an area is designated a "redevelopment area," a municipality must adopt a "redevelopment plan" before going forward. N.J.S.A. 40A:12A-7. A "redevelopment plan" is defined in the LRHL as:

---

[1] At oral argument on appeal, defense counsel confirmed that DeSilvio has not yet completed making the installments. Hence, DeSilvio is a contract purchaser while Grossman and Roche remain the property's record owners.

[A] plan adopted by the governing body of a municipality for the redevelopment or rehabilitation of all or any part of a redevelopment area, or an area in need of redevelopment, which plan shall be sufficiently complete to indicate its relationship to definite municipal objectives as to appropriate land uses, public transportation and utilities, recreational and municipal facilities, and other public improvements; and to indicate proposed land uses and building requirements in the redevelopment area or area in need of rehabilitation, or both.

[N.J.S.A. 40A:12A-3 (emphasis added).]

As noted at the outset of this opinion, once a redevelopment plan is adopted, the municipality is empowered, among other things, to:

Acquire, by condemnation, any land or building which is necessary for the redevelopment project, pursuant to . . . the "Eminent Domain Act of 1971," [N.J.S.A. 20:3-1 to -50], provided that the land or building is located within (1) an area that was determined to be in need of redevelopment prior to the effective date of P.L. 2013, c. 159, or (2) a Condemnation Redevelopment Area.[2]

[N.J.S.A. 40A:12A-8(c) (emphasis added).]

A "redevelopment project" is broadly defined under the LRHL as:

[A]ny work or undertaking pursuant to a redevelopment plan; such undertaking may include any buildings, land, including demolition, clearance or

_____

[2] The LRHL was amended in 2013 to increase notice requirements and in other respects. Those amendments are not pertinent to this appeal, which involves a redevelopment area designated in 2000 long before the amendments.

removal of buildings from land, equipment, facilities, or other real or personal properties which are <u>necessary</u>, convenient, or desirable appurtenances, such as but not limited to streets, sewers, utilities, parks, site preparation, landscaping, and administrative, community, health, recreational, educational, and welfare facilities.

[N.J.S.A. 40A:12A-3 (emphasis added).]

Here, the Borough established a redevelopment area by ordinance over eighteen years ago. The redevelopment ordinance has been amended in major respects three times. In each instance, Block 29, where defendants' lot is located, has been included within the redevelopment area. The first amendment to the plan was adopted by ordinance on December 9, 2003. The second amendment was adopted by ordinance on February 22, 2005. The third amendment was adopted by ordinance on December 27, 2007.

A significant aspect of the third amendment is that it creates two separate zoning districts: the Arts District and a separate Entertainment District. Residential uses are allowed in the Arts District. However, the Entertainment District, which includes the subject property, does not allow residential uses. If the subject property is not taken from them by the Borough, the DeSilvios apparently expect to apply for use variances that would enable them to include residential units within their anticipated mixed-use development.

Eventually, the Borough decided to acquire defendants' property. Toward that end, the Borough hired an appraiser who performed an inspection of the property on May 23, 2017. The appraiser was there a week early, as the notice provided to defendants had stated that the inspection would take place on May 30. After this scheduling glitch was discovered, the appraiser met with defendant DeSilvio and his wife at the property on May 30 and had further discussions.

The Borough's appraiser issued a report, which he completed on August 8, 2017. Using a "Sales Comparison Approach" method, the appraiser valued the property at $125,000, which is the same price that DeSilvio is paying Grossman and Roche pursuant to the September 2016 installment contract. However, DeSilvio contends that the $125,000 price he is paying is a distressed-sale figure. He maintains the parcel is worth far more, apparently because of the property's development potential.

Following the appraisal, the Borough offered defendants $125,000 for the property. Defendants did not make any counteroffer before the present litigation. They did not present a competing appraisal.

When pre-suit negotiations failed, the Borough adopted an ordinance on December 28, 2017, authorizing the acquisition of the property. The ordinance does not specify with any particularity why the property needs to be acquired.

8

Thereafter, in January 2017, the Borough filed a condemnation complaint against defendants in the Law Division. In paragraph two of the verified complaint, the Borough asserts that the acquisition of the subject property is "for the public purpose of [r]edevelopment pursuant to the Eminent Domain Act, N.J.S.A. 20:3-1 [to -50] and for the specific purpose of increasing the availability of public parking in the Borough of Glassboro." (Emphasis added).

In objecting to the taking, defendants argue that the Borough has not demonstrated a valid public purpose that makes it "necessary" to acquire their property. In addition, they accuse the Borough of acting in bad faith during the appraisal and negotiations processes.

The dispute was presented at an order to show cause hearing before the trial court on May 23, 2018. During oral argument, the Borough's attorney acknowledged that the complaint's asserted specific purpose of using the property for public parking is only a possible use, and that the property might be used for some other purpose related to redevelopment. The Borough's attorney stated that it is often necessary during redevelopment activities to "assemble" parcels in order to complete the overall plan.

Based on the oral argument and the documents provided, but without taking testimony, the trial court concluded in an oral opinion that the Borough

had shown an adequate public purpose to establish the necessity of the taking. The court rejected the Borough's argument that it could simply take any property within the redevelopment area at any time without having to provide a reason for it. Even so, the court found that the record was adequate to show, at this "early stage" of the process, the asserted need of public parking. The court further concluded the Borough had met its burden of showing the taking is "reasonable and necessary to effectuate the redevelopment plan." Moreover, the court rejected defendants' allegations of bad faith. The court accordingly appointed commissioners to value the property.

Defendants thereafter filed an emergent application with this court to stay the condemnation pending appeal. We granted that emergent application. Thereafter, we clarified that defendants, as they acknowledge, remain responsible for real estate taxes, insurance, and other carrying costs for the property in the meantime.

During the briefing phase on appeal, defendants moved to supplement the appellate record with various items, mostly relating to the appraisal process and post-complaint activities. After the Borough opposed the motion, we remanded the supplementation issue to the trial court. The trial court heard further argument and then issued a written decision denying supplementation.

Additionally, we granted the Institute for Justice ("Institute"), a public interest law firm which litigates property rights cases, leave to appear as amicus curiae in the appeal. The Institute joins with defendants in arguing that our courts should strictly construe the LRHL, and we should not approve a redevelopment taking, such as the one in this case, that is not supported by actual evidence of necessity.

## II.

## A.

As our Supreme Court has noted, three constitutional limitations circumscribe the State's eminent domain powers under the New Jersey Constitution:[3]

> First, the State must pay "just compensation" for property taken by eminent domain. N.J. Const. art. I, ¶ 20. Second, no person may be deprived of property without due process of the law. Twp. of W. Orange v. 769 Assocs., 172 N.J. 564, 572 (2002). Third, . . . the State may take private property only for a "public use." N.J. Const. art. I, ¶ 20; see Twp. of W. Orange, 172 N.J. at 572.
>
> [Gallenthin Realty Dev., Inc. v. Borough of Paulsboro, 191 N.J. 344, 356 (2007).]

---

[3] The parties do not invoke the federal or state constitutions' Takings Clauses and, instead, focus their arguments on statutory issues.

The LRHL delegates those State powers to municipalities and local redevelopment agencies. In exercising that delegated authority, the local entities must adhere to the conditions placed on their eminent domain powers.

A municipality's designation of property within its borders as a redevelopment area satisfies the constitutional "public purpose" requirement for eminent domain under the Blighted Areas Clause, N.J. Const. art. VIII, § 3, ¶ 1. See Vineland Constr. Co., Inc. v. Twp. of Pennsauken, 395 N.J. Super. 230, 250 (App. Div. 2007); see also Gallenthin Realty, 191 N.J. at 356-57. That constitutional requirement is not at issue in this case, as defendants concede the validity of the Borough's 2000 designation of the redevelopment area, which encompasses their parcel. The dispute in this case instead concerns the Borough's compliance with the statutes that must guide its intended acquisition, i.e., the LRHL and the Eminent Domain Act.

The LRHL distinguishes a municipality's redevelopment designation functions from its acquisition functions. The fact that a parcel is located within a designated redevelopment area does not mean the municipality may condemn and acquire that parcel at any time without restriction. Instead, the LRHL prescribes that the local government can only acquire, through its condemnation powers, a land or building "which is necessary for the redevelopment project." N.J.S.A. 40A:12A-8(c) (emphasis added).

The LRHL does not define the term "necessary" as used in this setting. The term necessity has a wide range of meanings in the law. For example, Black's Law Dictionary 1193 (10th ed. 2014), defines the noun "necessity" in its lead definition as "[s]omething that must be done or accomplished for any one of various reasons, ranging from the continuation of life itself to a legal requirement of some kind to an intense personal desire, a requirement." The definition in Black's notably adds, "Context normally supplies a sense of the degree of urgency." Ibid. Legislative intent concerning the term must therefore guide our interpretation.

"The first step in determining the Legislature's intent is to look at the plain language of the statute." Hubbard v. Reed, 168 N.J. 387, 392 (2001); see also State v. Harper, 229 N.J. 228, 237 (2017). As we have noted, the plain language of N.J.S.A. 40A:12A-8(c) requires municipalities and redevelopment agencies to take only land that is "necessary" for a specific redevelopment project.

We are mindful that another provision, N.J.S.A. 40:12A-8(n), gives broad powers to the municipality to "[d]o all things necessary or convenient to carry out its power." This generic provision should not be construed to make the specific provision set forth in N.J.S.A. 40A:12A-8(c) – governing property acquisition by condemnation – superfluous or meaningless. "In the absence of

13

legislative intent to the contrary . . . a specific statutory provision dealing with a particular subject prevails over a general provision."  Carter v. Doe (In re N.J. Firemen's Ass'n Obligation), 230 N.J. 258, 278 (2017).

We have not found any discussion of N.J.S.A. 40A:12A-8(c) within the legislative history that led to the enactment of the LRHL, and the parties have cited no such history to us.  However, a 1987 study recommending legislation related to the redevelopment and housing powers of local governments, which resulted in the adoption of the LRHL, emphasized the law should "[p]rovide for local flexibility and control in the development, financing, and implementation of local redevelopment programs," and "[p]rovide for the broadest possible interpretation of the powers and responsibilities of local governments." Cty. & Mun. Gov't Study Comm'n, Local Redevelopment in New Jersey: Structuring a New Partnership 53 (Jan. 1987) (emphasis added). The study also recommended that the statutory scheme should:

> Maintain, and in some cases increase, the public accountability of local entities involved in the redevelopment process.  At the local level, this means the continuation of appropriate public review and input with respect to designation of areas in need of redevelopment and rehabilitation, the formulation of local redevelopment plans, and the public acquisition of property in the redevelopment area.
>
> [Id. at 54 (emphasis added).]

Reported cases appropriately recognize that a designation of a redevelopment area under the LRHL provides a governing body with the legal authority to acquire land in the area by condemnation, but they do not provide comprehensive guidance as to what is required to show necessity in such matters. See Town of Kearny v. Discount City of Old Bridge, Inc., 205 N.J. 386, 402 (2011) ("If the redevelopment plan is adopted, the governing body may use any of the powers listed in N.J.S.A. 40A:12A-8 to implement the plan. Among them is the power to condemn the property and take it by eminent domain.") (citation omitted); see also Gallenthin Realty, 191 N.J. at 348; Iron Mountain Info. Mgmt., Inc. v. City of Newark, 405 N.J. Super. 599, 616 (App. Div. 2009); Harrison Redevelopment Agency v. DeRose, 398 N.J. Super. 361, 397 (App. Div. 2008).

That said, case law does elucidate two important facets of the term "necessary" as it is expressed in N.J.S.A. 40A:12A-8(c). As Judge Lisa wrote for the majority in Vineland Construction, 395 N.J. Super. at 252, "The determination of necessity [in N.J.S.A. 40A:12A-8(c)] is a legislative, not judicial, decision, and if reasonable, will not be judicially disturbed." This passage conveys two very important concepts: (1) the inherent "legislative" nature of a determination of necessity for acquiring a parcel under the LRHL; and (2) the judicial deference that must be afforded to such determinations of

necessity, so long as it appears that the government's determination is "reasonable."

To classify a governmental decision as "legislative" in nature signifies the government may pursue its decision as a policy choice, without first undertaking adjudicative processes. The government need not demonstrate in advance that its decision will withstand a possible court challenge. However, "legislative" decisions are still bound by any applicable constitutional and statutory limits on the legislative power. Here, the municipality has been delegated under the LRHL the legislative power to condemn property in redevelopment areas, but this power is limited by allowing the condemnation of land only if it is "necessary" for a redevelopment project.

For example, in the somewhat analogous context of challenges to the constitutionality of statutes, case law does not generally require a legislative body to document or substantiate, before voting on the statute, that the measure will withstand judicial scrutiny if it is challenged later in the courts. Instead, the case law generally allows the statute to be defended based on reasons that may be presented, and a record that may be developed, after such a challenge is raised. See, e.g., Twp. of Mahwah v. Bergen Cty. Bd. of Taxation, 98 N.J. 268, 285-86 (1985). The legislative body need not articulate

A-4556-17T2

all of its reasons, or prove them up front. FCC v. Beach Commc'ns, Inc., 508 U.S. 307, 315 (1993).

The second important strand we derive from Vineland Construction, 395 N.J. Super. at 252, is that a condemning authority cannot acquire a property unless the asserted necessity of taking it is "reasonable." This signifies that a municipality or redevelopment agency cannot take a parcel arbitrarily or capriciously, or based on fraudulent conduct or bad faith motives. See id. at 260; Twp. of W. Orange, 172 N.J. at 571.

In his dissenting opinion in Vineland Construction, Judge Holston differed with the majority about the necessity of utilizing eminent domain powers under the LRHL to enable, in that case, a private master redeveloper to acquire the appellant's property. 395 N.J. Super. at 260 (Holston, J.A.D., dissenting). Even so, Judge Holston did agree with the majority that the legal requirement of necessity under N.J.S.A. 40A:12A-8(c) entails the concept of reasonableness. Id. at 261. As Judge Holston stated, citing several earlier cases:

> The word necessary when involving the right of eminent domain does not mean "'absolutely necessary' or 'indispensable' but [ ] it is sufficient if the right proposed to be acquired is reasonably necessary to secure the end in view." Lidgerwood Estates, Inc. v. Pub. Serv. Elec. and Gas Co., 113 N.J. Eq. 403, 407 (Ch. 1933) (quoting Sayre v. City of Orange, 67 A. 933 (Sup. Ct. 1907)). "The addition of the adverb

17                                                                                          A-4556-17T2

> 'reasonably' . . . does little but emphasize that absoluteness or indispensability is not to be required. It is reasonable necessity . . . in the light of all the facts and circumstances and balancing all interests." In re Application of Hackensack Water Co., 41 N.J. Super. 408, 426 (App. Div. 1956).
>
> [Ibid. (alterations in original).]

We reaffirm these substantive propositions. "Necessary" under the statute means "reasonably necessary."  No more than that is required. The related important issue in the present case is not substantive, but evidential. We now address that evidential issue, infra.

### B.

Bearing in mind these general principles, the precise issue before us concerns what, if any, evidential showing a municipality or redevelopment agency must present in order to establish reasonable necessity for an acquisition of property under N.J.S.A. 40A:12A-8(c).

Two competing values, both of which are noted in the 1987 report underlying the LRHL, are in tension:  (1) flexibility in the redevelopment process, and (2) public accountability.  Adopting too restrictive an interpretation of "necessary" could detrimentally hinder the government's flexibility in carrying out a redevelopment project.  Conversely, adopting too lenient an interpretation of "necessary" may undermine the accountability of the governmental actors who make such acquisition decisions – both to the

18

public at large and to landowners who may lose their property rights through eminent domain.

We reject, as did the trial court, the Borough's extreme position that necessity may be established under N.J.S.A. 40A:12A-8(c) solely based on the fact that the parcel sought to be taken is physically contained within a zone designated as a redevelopment area. Such an approach, in effect, would read the limiting term "necessary" out of the text of the LRHL. Courts must construe statutes in a manner that imbues meaning to all of their provisions. See State v. Malik, 365 N.J. Super. 267, 278 (App. Div. 2003) ("[I]t is not proper statutory construction to reach a result which would render a provision completely meaningless."); see also State v. Hyland, 452 N.J. Super. 372, 388 (App. Div. 2017) (noting the court cannot read an amendment's grant of authority to the State to be meaningless). By adopting N.J.S.A. 40A:12A-8(c) and imposing within it a requirement of necessity, the Legislature signaled that the mere inclusion of a parcel within a designated redevelopment area does not authorize that parcel to be taken on a whim at any time.

Nor do we adopt the Borough's argument that it can satisfy the necessity requirement of N.J.S.A. 40A:12A-8(c) by simply declaring that it wishes to stockpile a parcel for some possible future need in the redevelopment area. That sort of inchoate or speculative justification – aptly described by

19

defendants as "land banking" or "land assemblage" – does not suffice to establish necessity under the statute.

The LRHL does not authorize municipalities and redevelopment agencies to take private property for no purpose beyond holding it until some future specific need presents itself. Such a "take first, decide later" approach is contrary to both the text of the statute and its public accountability objectives. Cf. City of Stockton v. Marina Towers, LLC, 88 Cal. Rptr. 3d 909, 913 (Ct. App. 2009) (invalidating a taking that involved "a case of 'condemn first, decide what to do with the property later'").

We appreciate that redevelopment projects often take years to complete. Financing opportunities and market conditions may vary over time. Physical or legal obstacles may appear that were not anticipated initially when a redevelopment plan was first adopted. As the 1997 legislative study noted, redevelopment agencies accordingly must retain a degree of flexibility in deciding which parcels they will need, and for what specific purpose they will need them, as the project goes forward.

This practical reality was recognized by the United States Supreme Court in Kelo v. City of New London, 545 U.S. 469, 488-89 (2005), in which the Court majority "decline[d] to second-guess the City's determinations as to what lands it need[ed] to acquire in order to effectuate the [development]

project." "It is not for the courts to oversee the choice of the boundary line nor to sit in review on the size of a particular project area." Id. at 489 (quoting Berman v. Parker, 348 U.S. 26, 35 (1954)). "Once the question of the public purpose has been decided, the amount and character of land to be taken for the project and the need for a particular tract to complete the integrated plan rests in the discretion of the legislative branch." Ibid. (quoting Berman, 348 U.S. at 35-36). "[C]ommunity redevelopment programs need not, by force of the Constitution, be on a piecemeal basis – lot by lot, building by building." Id. at 481 (quoting Berman, 348 U.S. at 35). Hence, flexibility is important to the redevelopment process as well as public accountability.

We resolve this tension between the goals of public accountability and flexibility by adopting an evidential approach that endeavors to imbue a restrictive meaning into the term "necessary" within N.J.S.A. 40A:12A-8(c), while avoiding unduly interfering with the government's prerogatives in carrying out a redevelopment project. The approach we adopt focuses on two components: (1) the condemnor's articulation of the "necessary" purpose tied to a redevelopment project; and (2) the showing that a condemnor must present to substantiate that purpose.

With respect to the first step of the analysis, it is imperative that the condemning authority identify the "redevelopment project" for which it wishes

to acquire the subject property. The Legislature carefully distinguished in the LRHL between the discrete terms "redevelopment area," "redevelopment plan," and "redevelopment project." These terms, as we have listed them, descend from the more general to the more specific. The Legislature chose to use the narrowest of these three terms, i.e., "redevelopment project," within N.J.S.A. 40A:12A-8(c). We presume that choice was not accidental.

Accordingly, a condemning authority must do more than recite that a parcel it seeks to condemn has some unexplained necessity to the overall redevelopment area or the redevelopment plan. Instead, there must be a particular redevelopment project identified and tied to the proposed acquisition. To be sure, that project can be massive in scope, such as the building of retail stores and other commercial establishments within a whole downtown district – or more modest, such as the demolition of a particular street corner for a parking garage or new municipal building. Our point is that there must be an explained linkage between the property to be acquired and the identified project.

Second, necessity under the statute cannot be satisfied by the municipality or the redevelopment agency simply proclaiming in conclusory fashion, without any supporting evidence, that such necessity exists. The claim of necessity, if challenged, must be justified by a reasonable presentation

of supporting proof.  It will not suffice for the condemning authority to just "say so."

Put another way, necessity under N.J.S.A. 40A:12A-8(c) cannot be established by the mere "ipse dixit" of the condemning authority.  See Black's Law Dictionary 956 (10th ed. 2014) (defining the Latin phrase "ipse dixit" as "[s]omething asserted but not proved").  The governmental authority cannot avoid its statutory obligation to establish necessity by simply asserting it.  If the condemning authority fails to do more than that, the authority risks having its declaration of taking judicially nullified.  As the late Justice Scalia once famously observed, one "who lives by the ipse dixit dies by the ipse dixit." Morrison v. Olsen, 487 U.S. 654, 726 (1988) (Scalia, J., dissenting).  "A determination predicated on unsupported findings is the essence of arbitrary and capricious action."  Bryant v. City of Atlantic City, 309 N.J. Super. 596, 610 (App. Div. 1998).

Without cataloging here all the ways that a condemning authority could make a showing of necessity, we illustratively suggest a variety of means.  The government might present discrete facts or data that reflect the need for the acquisition.  There might be a report from an expert, such as a professional planner, engineer, or traffic consultant.  There might be architectural plans or

drawings. Or a market study or economic forecast. Or some combination of such proofs. The evidential possibilities are open-ended.

We do not wish to overstate the government's evidential obligations. For one thing, no supporting evidence has to be presented unless and until the necessity of the taking is challenged by an adversary. We suspect that, in many instances, the owners of property the government is seeking to acquire for redevelopment will not contest the bona fides of the taking, and instead dispute only the valuation of the parcel. We also anticipate that property owners will not frequently wish to bear the expense of litigation to mount a challenge to the purpose of a taking.

In addition, we emphasize, as was made clear in <u>Vineland Construction</u>, that the government only must show that its claim of necessity is "reasonable." Courts should afford considerable deference to the government's prerogatives. It is not the judiciary's role to impose a burden on the condemning authority more stringent than the standard of reasonableness. Moreover, the government's showing does not have to be on a lot-specific basis but may reasonably encompass a larger amount of property, such as, a showing that an entire city block containing several parcels is needed for a particular structure, parking lot, or use. The use can be changed after the acquisition occurs, so long as the original taking was evidentially justified and pursued in good faith.

A-4556-17T2

The burden of coming forward with evidence of reasonable necessity, in cases where necessity is contested, rests upon the plaintiff municipality or redevelopment agency. The condemning authority presumably would have a superior ability to access and marshal such evidence. Once such evidence is presented and the plaintiff's burden of production is satisfied, however, the defendant landowner bears the ultimate burden of disproving that showing of necessity. See, e.g., Essex County Improvement Auth. v. RAR Dev. Assocs., 323 N.J. Super. 505, 516 (Law Div. 1999) (placing the ultimate burden on a landowner to establish that a taking by eminent domain is arbitrary and capricious or otherwise improper); State by Comm'r of Transp. v. Malibu Beach, Inc., 209 N.J. Super. 291, 296 (Law Div. 1986) (same). We hold that a landowner in this setting under the LRHL must disprove the condemning authority's showing of necessity by a preponderance of the evidence. See Liberty Mut. Ins. Co. v. Land, 186 N.J. 163, 168-70 (2006) (generally endorsing a preponderance standard of proof for civil litigation, unless a higher burden is prescribed by statute or special circumstances). This allocation of evidential burdens appropriately recognizes the legislative nature of the decision to acquire the parcel for a redevelopment project through eminent domain, and the general deference courts owe to such legislative

decisions, cf. Vineland Construction, 395 N.J. Super. at 252, while at the same time fairly taking into account a landowner's property rights.

We discourage protracted court proceedings on the necessity of a taking when there are genuine disputed issues of reasonableness and evidential sufficiency. We anticipate that such contested hearings, when they are warranted at all, typically could be completed at a hearing before a judge in a day or less, barring exceptional circumstances. Summary disposition of the issue may also be appropriate, if the condemnor's documentary presentation clearly manifests the necessity called for under the statute.

## C.

Having outlined these overarching principles, we turn to the record in this case. Our review of the legal sufficiency of the Borough's claim of necessity is de novo. See Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). Applying that de novo review, we respectfully reverse the trial court's approval of the proposed acquisition, because the Borough has failed to put forward an adequate demonstration of necessity for the taking.

First, we note that the December 2017 ordinance authorizing the taking of the subject property omits any reference to a particular need for the acquisition. The ordinance merely states the acquisition is "necessary" for

26

redevelopment of the redevelopment area, essentially parroting the terms of N.J.S.A. 40A:12A-8(c). As the Supreme Court analogously noted in Gallenthin Realty, 191 N.J. at 373, with reference to a redevelopment designation, the municipality must "establish a record that contains more than a bland recitation of applicable statutory criteria and a declaration that those criteria are met." Although we do not hold that it is vital for an ordinance authorizing a redevelopment taking under N.J.S.A. 40A:12A-8(c) to contain a specific articulated purpose for that acquisition, the terse nature of the ordinance here does not assist the Borough in countering defendants' claims of non-necessity. The ordinance notably says nothing about future parking needs.

Second, and most importantly, the record supplied to us is bereft of any evidence that the Borough reasonably needs defendants' property for an identified purpose tied to a redevelopment project. The precise nature of the redevelopment "project" relating to this parcel is murky at best. Putting that aside, the conclusory assertion in the Borough's verified complaint stating that the acquisition is for the "specific purpose of increasing the availability of public parking in the Borough of Glassboro" has no evidential support whatsoever in this record.

The Borough points to a page of the December 2007 third amendment of the redevelopment plan, which sets forth a few general "Design Guidelines"

for parking in the redevelopment zone. None of that material describes or estimates the amount of additional public parking that is expected to be needed for the redevelopment plan. In fact, the third amendment states that the goal of "shared parking" will be encouraged, and that parking for nonresidential components of the plan will be reduced from the number of spaces otherwise prescribed by the Borough's parking ordinances. That hardly substantiates any parking shortage to justify the taking of defendants' parcel.

The Borough further points to language in this section of the third amendment, which declares that the redevelopment plan anticipates "providing adequate parking on an area wide basis." Neither this broad proclamation, nor any other document in the record, connects the parking goals for the plan to a discrete project and to the neighborhood in which defendants' vacant lot is located.

There is no supporting planner's report, engineer's report, traffic study, facts, or data substantiating the necessity of this acquisition. The record does not show how the apparent recent construction of two new parking garages with over 2,000 parking stalls, as discussed in DeSilvio's certification and unrefuted, will be insufficient to meet the anticipated need. Nor is it shown why parking on defendants' property will be near enough to the heart of the redevelopment to make a material difference to address any parking shortfall.

28

Third, the equivocal nature of the Borough's reliance on a future need is also problematic. The Borough's acknowledgment that it may or may not need the parcel for future parking, and that some different purpose or need may materialize in the future, suggests an impermissible objective of land "stockpiling" or "land assemblage" that, as we already have noted, cannot satisfy the statutory requirement of necessity.

## III.

For these many reasons, we reverse the trial court's decision and vacate the appointment of commissioners and the associated declaration of taking. We do so without prejudice to the Borough's ability, if it so chooses, to attempt a future acquisition of defendants' parcel that is reasonably supported and substantiated by competent evidence.

Having reached this conclusion, we add for purposes of completeness that we reject defendants' arguments that the proposed acquisition must be nullified on other grounds.

In particular, we sustain the trial court's findings that defendants have not shown bad faith by the Borough, either in allegedly exhibiting hostility to developers who plan to rent private housing to University students, or in acting in bad faith in the appraisal and pre-complaint negotiations. We adopt the

29

sound findings of the trial court rejecting these claims as unsubstantiated and unpersuasive.

We also reject defendants' argument that the Borough is estopped, by the court's findings in a prior unpublished zoning opinion,[4] from arguing in the present case that there is or likely will be a public parking shortage in the Borough. The issues posed in that prior lawsuit are not the same as those presented here. In addition, the record amassed in that case several years ago may not fairly reflect the present factual circumstances.

Lastly, we sustain the trial court's well-reasoned decision on remand that rejected defendants' attempt to supplement the record with materials outside of those originally presented on the order to show cause.

All other contentions raised by the parties lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Reversed, without prejudice to a possible renewed attempt by the Borough to acquire the property in a manner consistent with the terms of the LRHL and this opinion.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[4] Glassboro Guardians v. Borough of Glassboro, Nos. A-1670-16 and A-1681-16 (App. Div. Apr. 18, 2018).

A-4556-17T2