NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0590-23
                        A-0594-23

TOWNSHIP OF JACKSON, a
municipal corporation in the
COUNTY OF OCEAN, STATE OF
NEW JERSEY,

     Plaintiff-Respondent,

v.

GETZEL BEE, LLC,

     Defendant-Appellant,

and

STATE OF NEW JERSEY,

     Defendant.

_____

TOWNSHIP OF JACKSON, a
municipal corporation in the
COUNTY OF OCEAN, STATE OF
NEW JERSEY,

     Plaintiff-Respondent,

v.

BELLEVUE JACKSON, LLC,

     Defendant-Appellant,

> **APPROVED FOR PUBLICATION**
>
> **January 31, 2025**
>
> **APPELLATE DIVISION**

and

STATE OF NEW JERSEY,

     Defendant.

_____

Argued October 28, 2024 – Decided January 31, 2025

Before Judges Sabatino, Gummer and Berdote Byrne.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket Nos. L-1384-23 and L-1385-23.

Richard P. DeAngelis, Jr., argued the cause for appellants Getzel Bee, LLC and Bellevue Jackson, LLC (Connell Foley LLP, attorneys; Richard P. DeAngelis, Jr., of counsel and on the briefs; Meredith S. Rubin, on the brief).

Jerry J. Dasti argued the cause for respondent (Dasti, McGuckin, McNichols, Connors, Anthony and Buckley, attorneys; Jerry J. Dasti, of counsel and on the briefs).

The opinion of the court was delivered by

BERDOTE BYRNE, J.A.D.

In these back-to-back appeals, which we consolidate for the purpose of issuing a single opinion, appellants Getzel Bee, LLC and Bellevue Jackson, LLC (collectively "LLCs"), appeal from identical October 20, 2023 orders of the Law Division, authorizing condemnation and appointing condemnation commissioners in accordance with the Township of Jackson's exercise of

eminent domain against their respective properties, Block 21601, Lots 84 and 90. The original ordinance authorizing the condemnation of the LLCs' land stated the public purpose for condemning the properties was for use as open space. The second ordinance, passed after the LLCs had opposed the Township's condemnation efforts, elaborated and stated condemnation of the lots was necessary to affect a land-swap agreement the Township had with a private developer, but still did not otherwise identify the proposed use of the condemned lots.

Lots 84 and 90 are not being used for the asserted public purpose of open space—an otherwise valid public purpose for eminent domain. Instead, the record shows the lots are being condemned and combined with land the Township already owns to exchange them for land intended to be used as open space. The Township has failed to demonstrate the statutorily-required public use of the condemned land and the trial court erred in determining the Township had validly exercised its eminent-domain authority to condemn the properties. Moreover, because the trial court's prior order authorizing the Township's land-swap agreement included Lots 84 and 90, although those lots were not owned by the Township, the land-swap agreement is not enforceable as to Lots 84 and 90, and does not preclude the LLCs from opposing the condemnation, as claimed by the Township. The Eminent Domain Act,

N.J.S.A. 20:3-1 to -50, offers the exclusive procedure for a property owner's right to challenge the government's authority to condemn its private property. Accordingly, we reverse.

## I.

We glean the following facts from the scant record and note there was no evidentiary hearing held by the trial court. On February 21, 2023, the Township entered a contract with Bellevue Estates, LLC ("Developer") in which the parties agreed to a land-swap pursuant to N.J.S.A. 40A:12-16.[1] The contract provided the Township was to receive land owned by the Developer, who initially sought to construct four private religious schools on that land, for use as open space by the Township. In return, the Developer was to receive land owned by the Township, combined with other land the Township intended to acquire, including the condemned lots, for an unidentified use. Although the contract does not specifically refer to Lots 84 and 90 as being subject to the land-swap,[2] the Township memorialized the land-swap contract in Ordinance 7-23 on April 4, 2023, which included Lots 84 and 90 as land "not

---

[1] Bellevue Jackson, LLC—one of the two appellants—has no relation to Bellevue Estates, LLC—the land developer that is a party to the Township's land-swap contract.

[2] The contract refers to a separate document listing the parcels to be exchanged from the Township to the Developer; that document is not in the record.

A-0590-23

actually owned by the Township" that it intended to acquire through condemnation or purchase to exchange with the Developer. Jackson, N.J., Ordinance 7-23 (Apr. 4, 2023).

The Township began negotiating with the LLCs a month earlier, on March 13, 2023, to purchase Lots 84 and 90. In its initial correspondence with the LLCs, the Township stated it was "in the process of acquiring substantial acreage for open space purposes" and it sought to purchase the LLCs' land. On April 12, 2023, the Township made a formal offer to acquire the LLCs' land, but the LLCs did not respond to this offer. The Township thereafter communicated its intention to institute eminent-domain proceedings against the LLCs.

On May 12, 2023, the Township passed Ordinance 15-23, which authorized the acquisition of the Lots 84 and 90 "by either arm's length transaction or, if necessary, by condemnation/eminent domain so that the Township . . . shall have access onto, over and through said privately owned real property for the purpose of open space." Jackson, N.J., Ordinance 15-23 (May 12, 2023). The specific findings in Ordinance 15-23, stated in a conclusory manner, are as follows:

> The Township Council finds that the acquisition will promote and protect the health, safety, and welfare of residents of the Township, and further find that any purchase or taking by eminent domain of any and all

5

property interests necessary for the same are all in the furtherance of a public use and purpose.

[Ibid.]

The Township then filed verified complaints and orders to show cause for the condemnation of Lots 84 and 90 on June 14, 2023, again specifying the use of the properties as open space in its pleadings.

On August 26, 2023, the Township passed Ordinance 26-23, amending Ordinance 15-23. See Jackson, N.J., Ordinance 26-23 (Aug. 26, 2023). The amended ordinance included more detailed findings and, for the first time, intimated that the condemned parcels were not to be used as open space by the Township, but instead were to be combined with land owned by the Township and exchanged for land that would be used as open space. The amorphous "findings" in Ordinance 26-23 are as follows:

> The Township Council finds that the acquisition will promote and protect the health, safety, and welfare of residents of the Township, and further find that any purchase or taking by eminent domain of any and all property interests necessary for the same are all in the furtherance of a public use and purpose. This Ordinance will permit the Township to exchange the [LLCs'] properties, along with surrounding properties, to protect and maintain open space for the Township. The Township has entered into a contract for the exchange of land. Such contract includes the exchange of the subject parcels. The purpose of the land exchange is to provide open space for the residents of Jackson Township. The land exchange, with the inclusion of [the LLCs'] properties, will

6

permit the [T]ownship to preserve open space in a desirable location of the Township. The location of the open space which will be made possible by adoption of this Ordinance and condemnation of the [LLCs'] parcels, will create open space in a centrally located portion of the Township, creating open space to be utilized by residents. The Township of Jackson has determined that this condemnation best serves the Township of Jackson and promotes public use of open space within the municipality.

[Ibid.]

Prior to the Township's filing of the orders to show cause, the land-swap agreement was challenged in a separate matter, White Road HOA, LLC v. Township of Jackson, filed on March 28, 2023. See Verified Complaint and Complaint in Lieu of Prerogative Writ, White Road HOA, LLC v. Township of Jackson, No. OCN-L-0723-23 (Law Div. Sept. 8, 2023). The White Road plaintiffs, not parties to this litigation, alleged the Township's land-swap with the Developer was invalid because: (1) the value exchanged for the Township's land was insufficient; (2) the exchange was discriminatory against the Orthodox Jewish community in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -50, because it was done to "avoid[] the construction of Orthodox Jewish schools in areas that Orthodox Jews do not presently reside"; and (3) the exchange's alleged discriminatory purpose against the Orthodox Jewish community violated the Equal Protection Clause and Due Process Clause of the United States Constitution. Id. at 5-7. The

7

complaint in White Road was dismissed on September 8, 2023, with the trial court primarily focusing on the just-compensation argument, and determining it could not "supplant its own judgment for that of a duly elected legislative body" because the plaintiffs had failed to provide sufficient evidence the Township acted arbitrarily or capriciously in entering the land-swap agreement. That ruling in White Road was not appealed.

In deciding the Township's complaint for condemnation in the within matter, the trial court relied on the White Road decision and the language of the ordinances to conclude the Township had "duly exercised its power of [e]minent [d]omain" in condemning Lots 84 and 90 and appointed condemnation commissioners to appraise the lots "taken by the [Township] for public purposes." The LLCs' motions to stay the orders pending appeal were denied.

## II.

The LLCs raise three issues on appeal. They posit: (1) the Township lacks a proper public purpose to acquire Lots 84 and 90 through eminent domain as required by N.J.S.A. 20:3-2 and N.J.S.A. 20:3-6; (2) the trial court's decision in White Road does not preclude them from challenging the Township's eminent-domain action; and (3) the trial court should have conducted an evidentiary hearing, requiring the Township to provide proof of a

valid public purpose for the condemned lots. We agree with the first two arguments and reverse the trial court's orders, concluding the Township's condemnation of each lot was invalid because the Township lacked a stated public purpose in the record for the condemned land.

A. The Public Use Requirement.

"Eminent domain is the power of the State to take private property for public use." State v. Lanza, 27 N.J. 516, 529 (1958) (internal quotation marks omitted). Because the power to condemn private property is grounded in the Federal and New Jersey Constitutions, this power "is subject to several important constitutional limits: the property acquired must be taken for a 'public use,' the State must pay 'just compensation' in exchange for the property, and no person shall be deprived of his or her property without due process of law." Township of West Orange v. 769 Assocs., LLC, 172 N.J. 564, 571 (2002) (first citing N.J. Const. art. I, ¶ 20; and then citing State v. Heppenheimer, 54 N.J.L. 268, 272 (Sup. Ct. 1892)); see also Borough of Glassboro v. Grossman, 457 N.J. Super. 416, 427-28 (App. Div. 2019). Statutes granting the power of eminent domain are to be construed strictly because they involve private property rights protected by the Federal and New Jersey Constitutions. See State v. Maas & Waldstein Co., 83 N.J. Super. 211, 217 (App. Div. 1964). As a result, strict adherence to the Eminent Domain

Act, N.J.S.A. 20:3-1 to -50, and the Local Lands and Buildings Law, N.J.S.A. 40A:12-1 to -38, is required.

To be sure, once the strict requirements of governing statutes have been met, great discretion is afforded to condemning authorities in determining what property may be taken for public use. Tex. East. Trans. Corp. v. Wildlife Preserves, 48 N.J. 261, 269 (1966); Burnett v. Abbott, 14 N.J. 291, 294 (1954). Nevertheless, "local entities must adhere to the conditions placed on [their] eminent domain powers,", and "'legislative' decisions are still bound by any applicable constitutional and statutory limits on the legislative power." Grossman, 457 N.J. Super. at 428, 431. As a result, the decision to condemn shall not be enforced where there has been a showing of "improper motives, bad faith, or some other consideration amounting to a manifest abuse of the power of eminent domain." Tenn. Gas Trans. Co. v. Hirschfield, 39 N.J. Super. 286, 288 (App. Div. 1956).

Additionally, when exercising the power of eminent domain, a governmental entity has an obligation to "turn square corners." F.M.C. Stores, Co. v. Borough of Morris Plains, 100 N.J. 418, 426 (1985) (quoting Gruber v. Mayor of Raritan Twp., 73 N.J. Super. 120, 127 (App. Div.), aff'd, 39 N.J. 1 (1962)). It has "an overriding obligation to deal forthrightly and fairly with property owners." Ibid.; Jersey City Redevelopment Agency v. Costello, 252

N.J. Super. 247, 257 (App. Div. 1991); see also State v. Siris, 191 N.J. Super. 261 (App. Div. 1983); Rockaway v. Donofrio, 186 N.J. Super. 344 (App. Div. 1982). That obligation includes providing a clearly-articulated public use for the condemned property set forth in the public record.

As noted, although municipalities enjoy discretion, the Eminent Domain Act requires a local entity demonstrate the land being condemned will be used for a valid public purpose. In its opposition brief, the Township contends—for the first time—that the Developer intends to build dormitories for students on the condemned property. However, the record before us is bereft of any indication as to the use of the condemned lots, other than what is, in essence, currency, to exchange for open space. It is undisputed the land-swap contract does not impose any limitation or restriction on the Developer's use of the condemned property and none of the ordinances state the intended use of Lots 84 and 90.

The United States Supreme Court has addressed this issue, stating: "[I]t has long been accepted that the sovereign may not take the property of A for the sole purpose of transferring it to another private party B, even though A is paid just compensation." Kelo v. City of New London, 545 U.S. 469, 477

11

(2005).[3]  For example, "[a] [c]ity would no doubt be forbidden from taking [a private citizen's] land for the purpose of conferring a private benefit on a particular private party."  Ibid.; see also Haw. Hous. Auth. v. Midkiff, 467 U.S. 229, 245 (1984) ("A purely private taking could not withstand the scrutiny of the public use requirement; it would serve no legitimate purpose of government and would thus be void.").

However, "it is equally clear that a State may transfer property from one private party to another if future 'use by the public' is the purpose of the taking."  Kelo, 545 U.S. at 477.  "In such cases, [the] government does not itself have to use property to legitim[ize] the taking" as long as the property taken will be put to a valid public use.  Midkiff, 467 U.S. at 244.  Kelo involved the condemnation of several lots for economic development purposes. In ultimately upholding the takings as consistent with a future public use of aiding the municipality's economic development, the Supreme Court noted it has "long ago rejected any literal requirement that condemned property be put into use for the general public," Kelo, 545 U.S. at 479 (quoting Midkiff, 467

---

[3]  In Kelo the United States Supreme Court analyzed the takings pursuant to the Fifth Amendment of the Constitution; that analysis applies to New Jersey's eminent-domain laws.  See Gardner v. N.J. Pinelands Comm'n, 125 N.J. 193, 205 (1991) (finding "standards [regarding takings through eminent domain] bear[ing] the imprint of federal constitutional doctrine . . . are in general conformity" with "[New Jersey's] constitutional principles governing the taking of property").

12

U.S. at 244), and has instead "embraced the broader and more natural interpretation of public use as 'public purpose,'" id. at 480.  Nevertheless, the requirement that the land condemned be used for some public purpose remains. See id. at 477; see also Midkiff, 467 U.S. at 244.

Although the Township, in its opposition brief and for the first time, argues the condemnation of Lots 84 and 90 will serve a "public benefit" including recreation, environmental preservation, economic benefits, and easement of traffic congestion by combining the condemned properties with land the Township already owns and exchanging it for more desirable land elsewhere, its attempt to equate this vague public benefit with the public use requirement is belied by the record, which demonstrates the Developer is not restricted in its use of the condemned lots in any fashion.

We have identified no reported case in New Jersey, nor has one been brought to our attention, where a private property was lawfully condemned solely to exchange it for other property that will be put to public use.  In fact, in all of New Jersey's reported cases, including Mount Laurel Township v. Mipro Homes, LLC, 379 N.J. Super. 358 (App. Div. 2005), aff'd, 188 N.J. 531 (2006), on which the Township relies, the land condemned was ultimately used for some public purpose.  See, e.g., State v. Silver, 92 N.J. 507, 510 (1983) (the State condemned portions of two land parcels for "highway purposes," and

the condemned land was used for that purpose); State v. Township of South Hackensack, 65 N.J. 377, 381 (1974) (the State condemned portions of six streets for highway construction and used the condemned land for that public purpose); State v. Gallant, 42 N.J. 583, 585 (1964) (the State condemned property "in connection with the construction of Interstate Highway 80" and used the condemned land for that purpose); Lanza, 27 N.J. at 521 (the State condemned land for the purpose of establishing a future water supply system and ultimately used the land for that purpose); Mipro, 379 N.J. Super. at 375 (the municipality condemned land where one of its purposes was to avoid further residential construction, but the land condemned was nonetheless used for passive open space, the stated purpose), aff'd, 188 N.J. 531 (2006); accord Salt Lake City Corp. v. Evans Dev. Grp., LLC, 369 P.3d 1263, 1267 (Utah 2016) ("It is not enough to accomplish a public use on some property; the condemnor must satisfy the public use requirement on the property subject to the condemnation." (emphasis in original)).

Neither Kelo nor the Eminent Domain Act contemplates the condemnation of a property for use solely as an asset in a scheme for an otherwise valid public purpose on some other property. Otherwise, as the LLCs aptly posit, government officials would be able to violate private

property rights at any time for any reason—or for no reason—untethered to the public use requirement.

The Township's condemnation action failed to meet the strict requirements of the Eminent Domain Act because the land sought to be condemned is not intended to be used for the purported public purpose of open space. None of the ordinances state how Lots 84 and 90 will ultimately be used, other than as an asset to exchange for other, more desirous land. Ordinance 26-23 establishes Lots 84 and 90 are included in the Township's land-swap agreement with the Developer "to protect and maintain open space within the Township." Jackson, N.J., Ordinance 26-23 (Aug. 26, 2023). However, a careful reading of the ordinance demonstrates it is Developer's land, acquired through the land-swap deal, that will be used for open space, not the land condemned by the Township. This precise circumstance, where "the sovereign . . . take[s] the property of <u>A</u> for the sole purpose of transferring it to another private party <u>B</u>" is expressly prohibited by <u>Kelo</u>. 545 U.S. at 477. Moreover, unlike the condemnations in <u>Kelo</u>, this purported exchange does not involve the exception where the sovereign "transfer[s] property from one private party to another [where] future 'use by the public' is the purpose of the taking." <u>Ibid.</u> Hence, the trial court's approval of the condemnation action contravenes the precedent set in <u>Kelo</u> and the requirement of our Eminent

15

Domain Act that any condemned property must be put to an articulated public purpose, requiring our reversal.

B. The LLCs Are Not Precluded from Challenging the Condemnation.

Additionally, the LLCs have a statutory right to challenge the condemnation. We recognize "[t]he doctrines of collateral estoppel, issue preclusion, res judicata, and the like serve the important policy goals of 'finality and repose; prevention of needless litigation; avoidance of duplication; reduction of unnecessary burdens of time and expenses; elimination of conflicts, confusion[,] and uncertainty; and basic fairness.'" First Union Nat'l Bank v. Penn Salem Marina, Inc., 190 N.J. 342, 352 (2007) (quoting Hackensack v. Winner, 82 N.J. 1, 32-33 (1980)). However, we disagree with the Township's claim that the trial court's final order in White Road precludes the LLCs' challenges to these condemnation actions.

"Res judicata prevents a party from relitigating for a second time a claim already determined between the same parties." In re Vicinage 13 of the N.J. Superior Ct., 454 N.J. Super. 330, 341 (App. Div. 2018). "Collateral estoppel (or 'issue preclusion') is 'that branch of the broader law of res judicata which bars relitigation of any issue which was actually determined in a prior action, generally between the same parties, involving a different claim or cause of

16

action.'" Ibid. (quoting State v. Gonzalez, 75 N.J. 181, 186 (1977)). For

collateral estoppel to preclude subsequent litigation,

> the party asserting the bar must show that: (1) the
> issue to be precluded is identical to the issue decided
> in the prior proceeding; (2) the issue was actually
> litigated in the prior proceeding; (3) the court in the
> prior proceeding issued a final judgment on the merits;
> (4) the determination of the issue was essential to the
> prior judgment; and (5) the party against whom the
> doctrine is asserted was a party to or in privity with a
> party to the earlier proceeding.
>
> [Winters v. N. Hudson Reg'l Fire & Rescue, 212 N.J.
> 67, 85 (2012) (quoting Olivieri v. Y.M.F. Carpet, Inc.,
> 186 N.J. 511, 521 (2006)).]

The Township asserts the LLCs are precluded from challenging its

authority to condemn Lots 84 and 90 because the trial court in White Road

ruled Ordinance 7-23 was valid. This argument fails because the fifth

enumerated requirement from Winters, requiring "the party against whom the

doctrine is asserted [be] a party to or in privity with a party to the earlier

proceeding," is not satisfied. Ibid. It is undisputed the LLCs were not parties

to the White Road matter, nor were they required to join the litigation to

protect their interests. The Township could have, but chose not to, implead

them as parties. The Township argues the LLCs are "effectively align[ed] with

the principle that a non-party who had the chance to join an earlier suit but

opted not to do so may be bound by the decision in that suit" because they

17

"had the opportunity to be part of the earlier litigation and chose not to participate." We disagree. This alleged "principle" is not one of the six exceptions enumerated by the Court in Taylor v. Sturgell, 553 U.S. 880 (2008), which provides an exhaustive list of exceptions to the rule requiring that a party against whom collateral estoppel is asserted was a party in the previous proceeding.[4]

There is no evidence the LLCs agreed to be bound by the decision in White Road, had a pre-existing legal relationship with any party in White Road, assumed any control over the litigation in White Road, or are currently acting as a proxy for or in priority with any party in White Road. The Township's assertion the LLCs were adequately represented in the White Road matter is of no moment because the matter before us concerns the Township's ability to condemn Lots 84 and 90, and White Road concerned only the validity of the Township's land-swap agreement.

---

[4] The six exceptions enunciated in Taylor are: (1) the party "agrees to be bound by the determination of issues" in the previous action; (2) the party has a "pre-existing substantive legal relationship[]" with a party in the previous action; (3) the party was "adequately represented by someone with the same interests" in the previous action; (4) the party "assume[d] control" over the litigation in the previous action; (5) the party serves as a proxy for a party in the previous action; or (6) a "special statutory scheme . . . expressly foreclose[s] successive litigation by nonlitigants." 553 U.S. at 893-95 (second alteration in original) (internal quotation marks omitted).

A-0590-23

We note the land swap agreement does not require the Township to condemn the LLCs' lots to meet its contractual obligations, and the Township could not have agreed to exchange land it did not already own. N.J.S.A. 40A:12-16 provides municipalities "may exchange any lands or any rights or interests therein owned by the . . . municipality" with private parties. Accordingly, N.J.S.A. 40A:12-16 authorizes a municipality to exchange only the land it owns at the time the agreement is made. Incorporated by reference in Ordinance 7-23 is a document providing tax lot information for all land involved in the Township's land-swap with the Developer. That document lists Lots 84 and 90 as subject to the land swap, but "not owned by Township." By this admission, the Township's attempts to exchange Lots 84 and 90 before it owned them are violative of N.J.S.A. 40A:12-16 and render the exchange invalid as to these two lots.[5]

More importantly, the Eminent Domain Act offers the exclusive procedure for a property owner's right to challenge the government's authority to condemn its private property. See N.J.S.A. 20:3-5, -6. The Act grants the Superior Court jurisdiction in "all matters in condemnation, and all matters incidental hereto and arising therefrom, including . . . jurisdiction to

---

[5] We note the trial court's final determination in White Road that the land-swap in general is valid is not impacted by our decision, as our decision only affects Lots 84 and 90, not the land owned by the Township.

A-0590-23

determine the authority to exercise the power of eminent domain." N.J.S.A. 20:3-5. Accordingly, the LLCs' challenge to the condemnation action was lawful and not precluded by the trial court's decision in White Road.

Finally, we note the Township did not "turn square corners" in its interactions with the LLC. See F.M.C. Stores, 100 N.J. at 426. The first ordinance claimed the condemned properties would be used for open space, as did the Township's original correspondence with the LLCs seeking to purchase the properties, and the Township's pleadings in support of condemning the two lots. These representations were pretextual as the Township had no intention of using the condemned lots as open space. And, in the amended ordinance, the Township failed to articulate how the condemned lots will ultimately be used. It is now clear the Township planned to use the lots not for open space, but to exchange for the Developer's land in a land-swap deal. As such, it failed its "overriding obligation to deal forthrightly and fairly with property owners." Ibid.

Because the Township attempted to condemn land it does not plan to use for its purported public purpose of open space, and has not articulated any valid public use of the condemned land, we reverse the trial court's October 20, 2023 orders in which the court found the Township had "duly exercised its power of [e]minent [d]omain" in condemning Lots 84 and 90 and appointed

A-0590-23

condemnation commissioners based on that erroneous finding. As there is no ordinance that sets forth the actual proposed public purpose of Lots 84 and 90, a requirement of the Federal and State Constitutions and New Jersey's Eminent Domain Act, and the purported use of the lots as open space has been demonstrated to be pretextual, we conclude a hearing before the municipality is not warranted, and decline to remand this matter to the municipality.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

21